### FORBES et al. v. COMMISSIONER OF INTERNAL REVENUE.
#### No. 3387.

Circuit Court of Appeals, Fourth Circuit.
Jan. 10, 1933.

Robert A. Littleton, of Washington, D. C. (James Mullen, of Richmond, Va., Mason, Spalding & McAtee, of Washington, D. C., and Williams & Mullen, of Richmond, Va., on the brief), for petitioners.

Francis H. Horan, Sp. Asst. to Atty. Gen. (G. A. Youngquist, Asst. Atty. Gen., Sewall Key, Sp. Asst. to Atty. Gen., and C. M. Charest, Gen. Counsel, Bureau of Internal Revenue, and John D. Kiley, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., on the brief), for respondent.

Before PARKER and SOPER, Circuit Judges, and CHESNUT, District Judge.

PARKER, Circuit Judge.

This proceeding involves the liability of W. S. Forbes during his lifetime for income tax for the year 1926. The Commissioner of Internal Revenue has determined a deficiency of $10,894.22, resulting from the disallowance of a loss of $50,000 in an investment in the stock of the Boyd Packing Company, a Virginia corporation, which the taxpayer claimed he has sustained in the year in question. The Board of Tax Appeals found that the corporation was formed in 1924, and issued capital stock to the amount of $50,000, of which the taxpayer became the sole owner in that year at a cost of $50,800. The business was buying and selling dry salt meat and lard. It owned no machinery and but little plant equipment. In the spring of 1926 the corporation decided to liquidate on account of financial reverses and the inability to secure requisite credit from the banks. With a view to discontinuing the business, the ac-counts payable were closed as quickly as possible, and only such business as could be carried on with very limited capital was transacted. Most of the employees were discharged at the end of the year; a few, including J. H. B. Peay, the secretary-treasurer, being retained to wind up the affairs of the company. It did not get entirely out of business, however, until the end of May, 1927, and the charter was not actually surrendered until February, 1928. During the five months from January 1 to June 1, 1927, it purchased merchandise in the amount of $23,597.22, and made sales of $35,355.46, which may be compared with the total sales during 1926 of $280,844.59. The net result of the operations during the five months of 1927 was a loss of $384.73.

The accounts receivable at the end of 1926, according to a balance sheet hereinafter referred to, were listed at $23,838.03. The Board said that the evidence indicated that these accounts were not worth their face value, but that the evidence failed to show their actual value, or that at that time the stock of the company was worthless. Efforts were made throughout the following year to collect these accounts, even after the company ceased to do business in May. Subsequent to June 1, 1927, $9,260.96 was collected from customers' accounts and turned over to Forbes as a payment on account of an indebtedness of $16,000 due him by reason of the payment by him of the company's notes held by the bank which he had assumed.

Forbes never got anything back on his stock, and it was a complete loss to him. Having been denied a deduction for this loss by the Commissioner for the year 1926, he subsequently claimed the loss for the year 1928; but this was also disallowed. He made no claim for the year 1927, having no taxable income in that year.

The Board of Tax Appeals in its opinion said that the testimony of Peay, who was the only witness, if alone considered, would be quite convincing of the worthlessness of the company's stock in 1926; but that his testimony was in conflict with statements contained in the 1926 and 1927 returns of the company, signed and sworn to by him. And so the Board held the petitioners had not met the burden imposed upon them to overcome the presumption of correctness of the determination of the Commissioner of Internal Revenue. These statements were balance sheets of the corporation as of December 31, 1926, and December 31, 1927, which were attached to the tax returns of the company for

the respective years, in neither of which the company had any taxable income. The balance sheet at the end of 1926 showed assets of $35,163.95 and liabilities of $22,882.47, or net assets of $12,281.48; and the balance sheet at the end of 1927 showed assets of $13,028.54 and no liabilities.

Peay testified that on December 31, 1926, the debts of $22,882.47 consisted of $21,000 due to the bank and $1,882.47 accounts payable; that the assets of $35,163.95 consisted of accounts receivable $23,838.03, finished goods and supplies $7,796.89, furniture and fixtures, $1,298.20, and other small items; that included amongst the accounts receivable were $10,271.30, consisting of miscellaneous accounts scattered over Virginia and the Carolinas, some of which were for very small amounts, the whole being subject at the time to certain shrinkage and actually yielding about 50 per cent. of the face value; also $9,512.62 due by the Hermitage Building Company, an affiliated corporation, and $1,407.24 due by an employee, both of which accounts were known at the time to be worthless. The witness further testified that the business was continued during the early part of 1927 in order to conserve the value in the completed merchandise and supplies which the company had on hand, and to reduce the amount of the probable loss. He explained that although the balance sheet for December 31, 1927, showed an apparent net worth of $13,028.54, this figure was in error due to his failure to give credit to Forbes for the sum of $16,000 which he had advanced in order to pay off the indebtedness to the bank, and that in fact there was an excess of liabilities over assets at the end of the year.

The statute and regulations involved in this case are the Revenue Act of 1926, chapter 27, 44 Stat. 9, § 214 (a), (4), (5), 26 US CA § 955 (a) (4, 5), and Treasury Department Regulations 69, Articles 141 and 144 which are as follows:

"Sec. 214 (a) In computing net income there shall be allowed as deductions: * * *

"(4) Losses sustained during the taxable year and not compensated for by insurance or otherwise, if incurred in trade or business;

"(5) Losses sustained during the taxable year and not compensated for by insurance or otherwise, if incurred in any transaction entered into for profit, though not connected with the trade or business. * * * "

Treasury Department Regulations 69:

"Art. 141. Losses. Losses sustained during the taxable year and not compensated for by insurance or otherwise are fully deductible (except by nonresident aliens) if (a) Incurred in a taxpayer's trade or business, or (b) Incurred in any transaction entered into for profit, or (c) Arising from fires, storms, shipwreck or other casualty, or theft.

"They must usually be evidenced by closed and completed transactions. * * * "

"Art. 144. Shrinkage in value of stocks. A person possessing stock of a corporation cannot deduct from gross income any amount claimed as a loss merely on account of shrinkage in value of such stock through fluctuation of the market or otherwise. The loss allowable in such case is that actually suffered when the stock is disposed of. If stock of a corporation becomes worthless, its cost or other basis determined under Section 204 may be deducted by the owner in the taxable year in which the stock became worthless, provided a satisfactory showing of its worthlessness be made, as in the case of bad debts * * * "

The proper application of the statute and the regulations to the case of worthless stock was well expressed in Royal Packing Company v. Commissioner (C. C. A.) 22 F. (2d) 536, 538, as follows: "The taxpayer was not entitled to the deduction merely because the stock may have subsequently become worthless or because, in the light only of subsequent developments, it may appear to have been inherently worthless during the year in question. Nor can the deduction be claimed for a mere shrinkage in value. A loss may be said to be actually sustained in a given year if, within that year, it reasonably appears that such stock has, in fact, become worthless. It is not requisite that there be a charge-off on the books of the taxpayer, and the ultimate fact of worthlessness may be shown by circumstances, as in other cases where that question is in issue. But the burden is on the taxpayer to establish the fact by reasonably convincing evidence." See, also, Royal Packing Co. v. Lucas, Commissioner (C. C. A.) 38 F.(2d) 180; De Loss v. Commissioner (C. C. A.) 28 F.(2d) 803; U. S. v. S. S. White Dental Mfg. Co., 274 U. S. 398, 47 S. Ct. 598, 71 L. Ed. 1120; Lewellyn v. Electric Reduction Co., 275 U. S. 243, 48 S. Ct. 63, 72 L. Ed. 262.

It is not enough that the stock now appears to have been worthless in the taxable year. To make such losses deductible, they must usually be evidenced by closed and completed transactions, U. S. v. S. S. White Dental Mfg. Co., 274 U. S. 398, 401, 47 S. Ct. 598, 71 L. Ed. 1120; and in any event, the worthlessness of the stock must have been reasonably apparent at the time. We have here

a corporation in process of liquidation, caused by financial reverses, and if the circumstances were such as to make it reasonably certain that the stock then had no value, the taxpayer was entitled to the deduction. Practical considerations must govern, for it is as true here as in Lucas v. American Code Co., 280 U. S. 445, 449, 50 S. Ct. 202, 203, 74 L. Ed. 538, that: "No definite legal test is provided by the statute for the determination of the year in which the loss is to be deducted. The general requirement that losses be deducted in the year in which they are sustained calls for a practical, not a legal, test." The rule laid down by Regulations 69, Article 151, in regard to bad debts, is relevant here. It provides that "where all the surrounding and attendant circumstances indicate that a debt is worthless and uncollectible, and that legal action to enforce payment would in all probability not result in the satisfaction or execution on a judgment, the showing of these facts will be sufficient evidence of the worthlessness of the debt for the purpose of deduction."

■■ Applying these principles to the case before us, we do not think that any other conclusion can reasonably be reached than that the stock in question became worthless in the year 1926 and that this fact was easily apparent to any one familiar with the circumstances. The taxpayer so considered it and charged it off as a loss in his tax return for the year; and while this, of course, is not conclusive, it is a fact of some significance as indicating his opinion at the time when he did not know but that the deduction would be valuable in the year 1927. The amount of the outstanding indebtedness of the Boyd Packing Company, the fact that so large a part of its assets consisted of accounts either worthless or of doubtful value, and above all that its directors considered it so badly involved that they placed it in process of liquidation for the purpose of protecting the indorser on its notes—these things clearly justified the taxpayer in treating the stock as worthless and as a loss of that year. It is true that he did not establish the loss by attempting a sale of the stock; but this was not necessary, for it is clearly apparent from the facts before us that no one with knowledge of the facts would have paid him a penny for the stock. As said by Judge Learned Hand in De Loss v. Commissioner (C. C. A. 2d) 28 F. (2d) 803, 804, "So far as human foresight could go, the shares were worthless, and the petitioner might have deducted the loss." We are not dealing with a case where there was hope that a business although involved might be saved and value in

the stock established. Hope had been abandoned and liquidation had been ordered.

The Board of Tax Appeals said that "the testimony of the treasurer of the company, if alone considered, would be quite convincing of the worthlessness of the company's stock in 1926"; and the Board refused to find the stock worthless on his testimony merely because it regarded the 1926 and 1927 tax returns of the company as contradictory of his testimony. There can be no question but that the evidence shows that the stock was worthless in 1926 unless these tax returns are evidence to the contrary; and consequently the case turns upon the question as to whether these returns show any value in the stock in the light of the testimony as to the various items embraced by them. We do not think that they do. The 1926 return shows, it is true, an excess of assets over liabilities, not including capital stock, of $12,280.48; but the $35,163.95 of assets included $1,298.20 of furniture and fixtures, $7,796.89 of finished goods and supplies, and $23,838.03 of accounts receivable. The furniture and fixtures brought less than 50 per cent. of the amount stated on final sale, and the testimony is that the finished goods and supplies were not worth exceeding 75 per cent. of the value at which they were listed. Of the accounts $9,512.62 was a worthless account due by a corporation hopelessly insolvent, $1,407.24 was due by an insolvent individual and the remainder represented small accounts scattered over a wide trade territory, and not worth in the aggregate, according to the uncontradicted testimony, over 50 per cent. of their face value. The tax return showed no taxable income for the year; and we do not think that it showed that the stock of the corporation had any value whatever. The business was in liquidation; and any court would have confirmed a sale of the assets for the amount of the liabilities as being a sale well made. As a matter of fact, the assets lacked more than $4,000 of meeting the liabilities, even though they were carefully sold through a continuation of the business over a period of six months, and the resulting loss fell upon the taxpayer as an indorser of the corporation's paper.

Nor is there anything in the 1927 return which supports the action of the Board. It is true that that return shows assets of $13,028.54 and no liabilities other than capital stock; but the evidence conclusively shows that this was a mistake and that, as a matter of fact, the taxpayer had paid the banks as indorser for the company the sum of $16,000

for which the company was indebted to him at the time.

Taking the evidence as a whole, we think that it shows conclusively that at the end of the year 1926 the assets of the corporation had no value in excess of its liabilities and that its capital stock was worthless. We do not regard the tax returns of 1926 and 1927 as any substantial evidence to the contrary. If the case had been tried before a jury we would unhesitatingly hold that a verdict should have been directed for the taxpayer; for the evidence is "so overwhelmingly on one side as to leave no room to doubt what the fact is." Gunning v. Cooley, 281 U. S. 90, 50 S. Ct. 231, 233, 74 L. Ed. 720. And in such case we think that the decision of the Board should be reversed as not finding substantial support in the testimony.

Reversed.