## THE ALPENA.

(*District Court, E. D. Michigan.* May 16, 1881.)

1. GARNISHMENT—"EFFECTS"—ADMIRALTY RULE 2.

> Ships and other tangible personal property are "effects," within the meaning of the second general admiralty rule, and may be reached by a writ of garnishment when in the hands of a third person.

In Admiralty.

This was a libel by William B. Slayton, administrator of the estate of Montgomery Crossman, against the Goodrich Transportation Company, owner of the steamer Alpena, to recover damages for the death of Crossman, occasioned by the foundering of the Alpena in Lake Michigan.

Upon the filing of the libel a writ of garnishment was issued requiring the Detroit Dry Dock Company to appear and make return concerning the "property" of the respondent in its possession or under its control. The garnishee appeared and moved to quash the writ, upon the ground that the rules of this court did not authorize the issuing of the same, and that said rules only require garnishees to answer as to the "credits and effects" of the principal defendant in their hands. Prior to the making of this motion, however, the dry dock company made return to the writ of garnishment that it was constructing certain vessels for the Goodrich Transportation Company, the present value of which was over $100,000.

*Carpenter & McLaughlin, H. M. Campbell,* and *Alfred Russell,* for libellant.

*Wisner & Speed,* for garnishee.

BROWN, D. J. The sole question in this case is whether the practice of courts of admiralty in this country will authorize a garnishee to be held liable for ships, or other personal property of like nature, in his hands, belonging to the principal defendant. The second general admiralty rule allows, in suits *in personam,* a warrant of arrest, with a clause therein that, if the defendant cannot be found, to attach his "goods and chattels" to the amount sued for; or, if such property cannot be found, to attach "his credits and effects," to the amount sued for, in the hands of the garnishees named therein. The second admiralty rule of the district court contains language of similar import. District court rule 14,

however, provides that, upon the service of a foreign attachment, it shall be the duty of the garnishee named therein to file with the clerk an affidavit containing a full and true statement of the "property or funds" in his hands belonging to the principal defendant at the time the writ was served, and at the time the affidavit was made. It may be conceded at once that the power of this court to require garnishees to make disclosures under rule 14 cannot enlarge the power given by the second general admiralty rule in cases of garnishment; and therefore that the garnishee can only be required to make return of the "credits and effects" of the principal defendant in his hands or under his control; and, consequently, unless the word "effects" is broad enough to include ships and other tangible personal property, the garnishee cannot be held liable in respect thereof.

The word "effects" is one of very extensive import, and is frequently used in wills as a synonym for personal estate. In *Hogan* v. *Jackson*, Cowp. 299, 304, Lord Mansfield considered it to be synonymous with "worldly substance," which means whatever can be turned to value, and therefore that "real and personal effects" means all a man's property. A similar definition is found in *Campbell* v. *Prescott*, 15 Ves. 500, 507; *Doe* v. *Earles*, 15 M. & W. 450.

This is substantially the definition given by Bouvier, who says that the word is equivalent to property or worldly substance, and may carry the whole personal estate when used in a will. But when it is preceded and connected with words of a narrower import, and the bequest is not residuary, it will be confined to species of property *ejusdem generis*. Judge Conkling, in his work upon Admiralty, vol. 2, p. 141, concedes that the word ordinarily is one of comprehensive import, but treats it as being used in general admiralty rule 2 in contradistinction to goods and chattels, and may be supposed to refer more especially to kinds of property not strictly falling within the scope of the other terms employed, and not properly susceptible of manual seizure; such, for example, as shares in the stock of corporate companies, money in the hands of a sheriff, or of an agent, or the like.

His opinion upon this point, however, is not supported by any adjudicated case, or by any other elementary writer, and it seems to run counter to the established practice of courts of admiralty from the earliest days. In construing doubtful words, in rules of practice, I think that great weight should be given to a practice which has immemorially existed, irrespective of written rules.

In *Manro* v. *Almeida*, 10 Wheat. 473, 493, Mr. Justice Johnson, delivering the opinion of the supreme court, says:

"To all the questions which may be supposed to arise on this part of the case we give one general answer, viz.: That as goods and credits in the hands of a third person, wherever situated, may be attached by notice, there cannot be a reason assigned why the goods themselves, if accessible, should not be actually attached; and although it is very clear that the process of attaching by notice seems given as the alternative, where the officer cannot have access to the goods themselves, yet all this may be confided to the discretion of the judge who orders the process."

The question was whether the marshal could make actual seizure of defendant's property; but it was assumed, upon the authority of Clarke's Praxis, that the goods and credits of the defendant in the hands of third persons might be attached by the service of a notice.

In *Reed* v. *Hussey*, B. & H. 525, it is assumed rather than decided that any personal property in the hands of a third party may be reached by garnishment, but cannot be actually seized unless in the actual or constructive possession of the owner.

In *Bouysson* v. *Miller*, Bee's Rep. 186, the learned judge for the district of South Carolina, the father of admiralty law in this country, held, upon the authority of Clarke's Praxis, that an attachment might issue against the goods of a defendant in the hands of a third person. Such, also, is the clear assumption in the cases of *Smith* v. *Miln*, Abbott's Adm. 373; and *Shorey* v. *Rennell*, 1 Sprague, 418; Ben. Adm. § 428–435.

There is no doubt that, by the second general admiralty rule, an attachment is authorized against the goods and chattels of a defendant if found within the district and in the possession of the defendant or his agent; and instead of re-

garding the words "credits and effects" in that rule as used in contradistinction to "goods and chattels," it seems to me the natural object of the proceeding by garnishment was to enable the libellant to reach the same property, viz., goods and chattels, if held by a third person not an agent of the owner, as well as any debts owing by such person to the owner. I regard the word "effects" as practically equivalent to "goods," and including personal property, tangible as well as intangible.

The motion to quash must therefore be denied.