### NATIONAL BOARD OF MARINE UNDERWRITERS *v.* MELCHERS.[1]

(*District Court, E. D. Pennsylvania.   January 6, 1891.*)

1. ADMIRALTY—RELEASE OF ATTACHED PROPERTY—ADDITION OF PARTIES.
   Where a suit has been brought against one of two ship-owners, and property attached thereunder released before the name of the other owner is introduced, the suit must be regarded as against the original respondent only.

2. SHIPPING—AVERAGE—LIABILITY OF OWNER.
   A part owner of a vessel is liable *in solido* for a balance due on an average adjustment.

3. ADMIRALTY—JURISDICTION—RECOVERY ON AVERAGE ADJUSTMENT.
   A district court proceeding in admiralty has jurisdiction by foreign attachment in a suit against a vessel owner to recover a balance due on an average adjustment.

[1] Reported by Mark Wilkes Collett, Esq., of the Philadelphia bar.

4. SAME—CONFLICT OF LAWS—AVERAGE ADJUSTMENT.

A vessel having been damaged put into Fayal, and was unable to proceed on her voyage. Her cargo was removed, and the vessel sold. The master sought a substitute, but was unable to find one. He then collected *pro rata* freight from the underwriter's agents, who shipped the cargo to its destination, advancing the necessary supplies, and chartering a vessel. *Held,* although the bill of lading at Fayal was taken in the master's name, the voyage was abandoned, and a severance of interests occurred there, and hence the rights of the parties in an adjustment are to be determined by the rules prevailing at Fayal, even though no demand was made there for an adjustment.

In Admiralty.

Libel *in personam* to recover the proportion of general average expenses incurred by the defendant as owner of the bark Walraven Melchers. The Dutch bark Walraven Melchers, on a voyage from Hamburg to New York, with a general cargo consigned to several owners, sprung a leak, and bore away for Fayal, where she arrived. A survey was called by the master, and under the advice of the surveyors the cargo was discharged and stored. By a subsequent report the surveyors recommended the vessel to be sold, which was accordingly done. The master notified his owners, the defendants, who declined to furnish any funds, and the cargo was brought on to New York by a vessel chartered for that purpose by the plaintiffs, as agents for the underwriters or cargo. The various expenses incurred at Fayal were paid partly by a credit opened by the libelants and moneys raised by a *respondentia* bond on cargo paid by libelants, and partly from funds arising from the sale of the vessel. The master remained at Fayal at the instance of the underwriters' agents there. The vessel's funds were placed in the hands of the master's agent, the vice-consul of the Netherlands, who disbursed the same. Almost all the cargo was shipped from Fayal by the Geestemunde, the chartered vessel, in the name of the master of the Walraven Melchers, deliverable to the order of Messrs. Peter Wright & Sons at New York. The freight from Fayal by the Geestemunde exceeded the original freight from Hamburg to New York. The master exacted from underwriters' agents, before allowing the cargo to be forwarded, distance or *pro rata* freight on the part of the voyage performed by the Walraven Melchers from Hamburg to Fayal, which was paid by them to the master under protest, in order to obtain possession of the cargo to be forwarded to the United States. The master did not cause any valuation or appraisement of the cargo to be made, nor procure an average adjustment to be prepared at Fayal, and the funds to provide for carriage of cargo to the United States were furnished by the underwriters' agents at Fayal, who after its arrival in New York had an adjustment made there, by which the owners of the vessel were declared debtors to the owners of the cargo. This suit was begun by attaching in Philadelphia the bark Jan Melchers as defendant's property. After the release of the vessel, Andriàn Hemmes, a half-owner of both vessels, was made a party by amendment.

*Morton P. Henry,* for libelants.

*Cutler* v. *Rae,* 7 How. 729, has been overruled by *Morewood* v. *Enequist,* 23 How. 491, and *Insurance Co.* v. *Dunham,* 11 Wall. 1, and has been recognized to be overruled in *San Fernando* v. *Jackson,* 12 Fed. Rep. 341; *Coast*

*Wrecking Co.* v. *Phœnix Ins. Co.*,7 Fed. Rep. 236; *Belt* v. *Gumbel*, 24 Fed. Rep. 383; *Heye* v. *North German Lloyd*, 33 Fed. Rep. 60; *Olivari* v. *Insurance Co.*, 37 Fed. Rep. 894; *Sweeney* v. *Thompson*, 39 Fed. Rep. 121; *Wheaton* v. *Insurance Co.*, Id. 879. Foreign attachment lies in admiralty. *Atkins* v. *Disintegrating Co.*, 18 Wall. 272; *Manro* v. *Almeida*, 10 Wheat. 473. The place for adjustment is the place of final destination. *Barnard* v. *Adams*, 10 How. 270; *Bradley* v. *Cargo of Lumber*, 29 Fed. Rep. 648; *McLoon* v. *Cummings*, 73 Pa. St. 98. A transshipment of the cargo to complete the voyage does not end the adventure. *Pierce* v. *Insurance Co.*, 14 Allen, 320; *Winter* v. *Insurance Co.*, 30 Pa. St. 334. The respondent is not entitled to the benefit of Act Cong. June 26, 1884. *Card* v. *Hine*, 39 Fed. Rep. 818; *The Amos D. Carver*, 35 Fed. Rep. 665. The master was not entitled to *pro rata* freight. *Armroyd* v. *Insurance Co.*, 3 Bin. 437; *Welch* v. *Hicks*, 6 Cow. 504; *Vlierboom* v. *Chapman*, 13 Mees. & W. 230; 1 Pars. Mar. Law, 166; *The Joseph Farwell*, 31 Fed. Rep. 844.

*Horace L. Cheyney, J. Rodman Paul,* and *A. Lydney Biddle,* for respondent.

Ship-owners are not partners, and respondent is only liable for a moiety. 1 Pars. Shipp. & Adm. 116; Hen. Adm. 67; 3 Kent, Comm. 151; *Cutler* v. *Rae* has been formally approved by the supreme court in *Dupont De Nemours* v. *Vance*, 19 How. 171; *Bags of Linseed*, 1 Black, 108. *Pro rata* freight is allowable by law of Germany. Articles 630, 632, Code of Commerce for all Germany. *Liverpool, etc., Co.* v. *Phenix Ins. Co.*, 129 U. S. 397, 9 Sup. Ct. Rep. 469. By law of Holland. Article 478, Commercial Code Netherlands. Article 1526 of Portuguese Code. By law of United States. Abb. Shipp. (12th Ed.) 369; Pars. Shipp. & Adm. 239; *Luke* v. *Lyde*, 2 Burrows, 883; *Hunter* v. *Prinsep*, 10 East, 378; *Bork* v. *Norton*, 2 McLean, 422; *The Nathaniel Hooper*, 3 Sum. 542; *Gray* v. *Waln*, 2 Serg. & R. 229. An adjustment should be made at the points of the separation of interest. Lown. Av. (4th Ed.) 281; Gourl. Gen. Av. 4207.

BUTLER, J. In disposing of this case I will confine myself to the points urged at the hearing; and will do little more than state conclusions respecting these. Some of them involve doubt and difficulty. None of them, however, are new in their legal aspect, and, while the authorities are not harmonious, they have been so fully discussed that nothing additional can be advanced. The suit was brought against one of the ship's owners, alone, and the property attached was released before the name of the other was introduced. Its introduction was, therefore, too late. The suit must be regarded as against the original respondent only. In my judgment, however, he is answerable for the entire liability of the ship. As said in Parsons on Shipping, p. 89, all part owners are generally, liable, *in solido* for repairs and necessary supplies. The cases cited support the text.

The court has jurisdiction. In the absence of *Cutler* v. *Rae*, 7 How. 729, this I believe would not be questioned. That case, however, cannot be regarded as authority. Its decision as respects the point, was unfortunate. The question was neither argued nor presented—as appears by an appendix to 8 How. p. 616—and the decision (which did not pass without dissent in the court itself) was a surprise to the profession. The later rulings of the same court show it to have been a mistake, (*More-*

*wood* v. *Enequist*, 23 How. 491; *Insurance Co.* v. *Dunham*, 11 Wall. 1;) and these later cases have been followed in the circuit courts, (*Belt* v. *Gumbel*, 24 Fed. Rep. 383; *Heye* v. *North German Lloyd*, 33 Fed. Rep. 60; *Olivari* v. *Insurance Co.*, 37 Fed. Rep. 894; *Sweeney* v. *Thompson*, 39 Fed Rep. 121; *Wheaton* v. *Insurance Co.*, Id. 879.)

Should the average adjustment be made in accordance with the rule prevailing at Fayal, or those in force at New York? This question involves difficulty. I think, however, the views expressed by Mr. Lowndes, in his work on General Average, p. 198, are sound and govern the subject. I therefore adopt them. As he says, where a vessel is wrecked, or so damaged by peril of the sea, that the voyage cannot be continued, and the master finds and substitutes another, whereby the cargo is carried to its destination, retaining his lien and earning freight, no separation of interests occurs until the destination is reached. Consequently the adjustment is to be made according to the rules prevailing there. Where the master forwards the cargo to its destination by another vessel in pursuance of his agency for its owners, alone, without intention to retain his lien and earn freight, the adjustment is to be made according to the rules of the place of reshipment. The intent in such case, however, may be and sometimes is involved in doubt by taking a bill of lading in the master's name, and consigning the goods to the ship's agent. Where the cargo is furnished by or on behalf of its owners, without retention of the ship's lien, the separation of interests occurs at the place of reshipment, and the adjustment must, consequently, be made according to the rules prevailing there.

In view of this statement of the law my understanding of the facts in the case settles the question involved. The vessel was unable to proceed beyond Fayal. She was so damaged as to render the cost of repair unjustifiable. The master sought a substitute but was unable to find one. He was not required to do more, and consequently abandoned the voyage. The libelants, who represent the underwriters directly, and the owners of the cargo indirectly, in view of these facts took charge of the cargo, chartered the vessel, advanced necessary supplies and carried the cargo to its destination. The libel substantially admits these facts: It says the "master abandoned the voyage, * * * and the libelants assumed the duty of master and owner of the vessel towards it, advanced the money required to pay all expenses incurred at Fayal * * * in order to obtain possession, and chartered the North German Geestemunde to carry it to New York." That the voyage was completely "abandoned" by the master, and that he intended to have no further connection with the cargo after its delivery to the libelants at Fayal, is I think made clear by his acts and declarations, and especially by his demand of *pro rata* freight. I do not attach importance to the fact that the bill of lading at Fayal was taken in the master's name. This was done probably at the suggestion of others, and for the sake of convenience merely. He did not retain his hold on the cargo; but consigned it to the libelants' agent. In my judgment the ship's connection with it was completely severed at Fayal. Mr. Despard, an adjuster and the libelants'

representative, a gentleman of intelligence and experience, adopted this view, as appears by his testimony.

It follows that the rights of the parties are to be determined by the rules prevailing at Fayal. The respondent is not affected by the fact that he did not demand an adjustment there before parting with the cargo, as possibly he might be were he now suing for a balance on general average. He is here defending simply against a claim set up by others.

In this view of the facts found, it follows also that the demand of *pro rata* freight was justifiable. It is unnecessary to inquire whether the latter subject was governed by the law of the ship's flag, the place of contract or that where the voyage terminated. The laws of each in this case justify the charge. An adjustment must therefore be made according to the foregoing opinion. If the parties do not agree upon such an adjustment, a commissioner will be appointed.