ROSASCO v. THOMPSON et al.

(District Court, S. D. Alabama. May 4, 1917.)

1. ADMIRALTY ☞47—PROCESS—FOREIGN ATTACHMENT.

Admiralty rule 2 (29 Sup. Ct. xxxix) provides that in a suit in personam the mesne process may be by a simple warrant of arrest in the nature of a capias, or by warrant of arrest with a clause directing, should the defendant not be found, the attachment of his goods and chattels to the amount sued for. Rule 47 (29 Sup. Ct. xliv) abolishes imprisonment for debt on process issued out of admiralty courts, where by the laws of the state imprisonment for debt is abolished. *Held*, that the writ of attachment was a well-recognized process long before the rules were adopted, and the authority for its issuance does not depend upon the rules, and rule 2 does not abolish such writ in those cases where, by reason of the abolishment of imprisonment for debt, there can be no warrant of arrest.

[Ed. Note.—For other cases, see Admiralty, Cent. Dig. §§ 396-403.]

2. ADMIRALTY ☞47—PROCESS—FOREIGN ATTACHMENT.

A District Court, having admiralty jurisdiction conferred upon it, has power to issue a writ of attachment in a suit in personam, though it has adopted no rule as to such writ.

[Ed. Note.—For other cases, see Admiralty, Cent. Dig. §§ 396-403.]

In Admiralty. Libel in personam by one Rosasco against S. K. Thompson and others. On suggestion by Palmer Pillans, as amicus curiæ, that the attachment should be discharged. Writ sustained.

Harry T. Smith & Caffey, of Mobile, Ala., for libelant.
Palmer Pillans, of Mobile, Ala., amicus curiæ.

ERVIN, District Judge. This was a libel in personam, filed by Rosasco against Thompson et al., alleging that the defendants were all nonresidents, for the breach of a charter party by Thompson et al. The prayer asks to have process in due form of law, according to the practice of this court in cases of admiralty and maritime jurisdiction, against the defendants, naming them, and, if they cannot be found, that an attachment may issue against their goods and chattels, and for relief.

Libelants moved for and were granted an attachment by the court, and now comes Palmer Pillans, as amicus curiæ, and suggests that the writ of attachment was improvidently issued and should be withdrawn, and the vessel seized under said attachment should be discharged from the seizure, because the only provision in the admiralty for a writ of this sort, like a writ of foreign attachment at the common law, is contained in the second admiralty rule, and there is provided only as a subordinate clause forming a part of a writ which is primarily a warrant of arrest of the person of the defendant, and no process or warrant for the arrest of the defendant can now be had, for that imprisonment for debt has been abolished by the Constitution of the state of Alabama. The matter was argued at length and submitted to the court for its ruling.

[1] The real question for consideration is whether or not the Supreme Court, in adopting the admiralty rules, so worded rule 2

(29 Sup. Ct. xxxix) as to deprive the admiralty court of the power to issue attachments against nonresidents? Rule 2 reads as follows:

"*In Suits in Personam, Nature of.*—In suits in personam, the mesne process may be by a simple warrant of arrest of the person of the defendant in the nature of a capias or by a warrant of arrest of the person of the defendant with a clause therein that if he cannot be found, to attach his goods and chattels to the amount sued for; or if such property cannot be found, to attach his credits and effects to the amount sued for in the hands of the garnishees named therein; or by a simple monition in the nature of a summons to appear and answer to the suit, as the libelant shall in his libel or information pray for or elect."

This question was presented and ruled on in a very short opinion by my predecessor, Judge Toulmin, in the case of Chiesa v. Conover (D. C.) 36 Fed. 334, where he says:

"The only authority for the attachment of the property of the defendant in a suit in personam is found in rule 2 of the rules of practice, which provides that the mesne process may be by a warrant of arrest of the person of the defendant, and, if he cannot be found, for an attachment of his goods and chattels. The attachment of the vessel is not authorized except where the defendant cannot be found, and then, where the warrant of arrest is authorized under the law of the state where issued, it should be in the alternative; that is to say, it should direct, first, the arrest of the person of the defendant, and, if he cannot be found, then the attachment of the property. My opinion, therefore, is that the writ of attachment can be had only where a warrant of arrest of the person of the defendant is authorized. Such attachment can only issue where such warrant can issue, and be executed only where the warrant of arrest cannot be executed, because the defendant cannot be found. As a warrant of arrest of the person of the defendant is unauthorized and illegal under the law of this state, so is a writ of attachment, which is dependent on such warrant of arrest. In other words, as the right to the writ of attachment is dependent on the right to imprison for debt, and as by law imprisonment for debt is abolished in this state, it must follow that the writ of attachment in this case is without authority of law, and should be vacated, and it is so ordered."

I approach the discussion of this question with a great deal of hesitation, because of the great admiration I felt for Judge Toulmin, and my recognition of his great learning and his length of service upon the bench; but I feel that I should not be controlled by any admiration or respect I may have for him in making my ruling, but only by the reasons he may give for such ruling. I differ with Judge Toulmin in the very statement of the proposition. He says the only authority for the attachment of the property of the defendant in a suit in personam is found in rule 2 of the rules of practice. The writ of attachment in an admiralty court was a well-recognized process long before the rules of practice were adopted by the Supreme Court. In the case of Manro v. Almeida, 10 Wheat. 489, 6 L. Ed. 369, the Supreme Court says:

"The prayer of the libel contemplates two purposes: First, to compel appearances; second, to condemn for satisfaction. Now, although the latter may be only incidental, and not the primary object of the attachment, yet, if it be legal for the purpose of compelling appearance, the demand for the one purpose was no ground for refusing it for the other. * * * It is a mistake to consider the use of this process in the admiralty as borrowed from, or in imitation of, the foreign attachment under the custom of London. Its origin is to be found in the remotest history, as well of the civil as the common law."

In Atkins v. Fibre Disintegrating Company, 18 Wall. 303, 21 L. Ed. 841, the Supreme Court again says:

"The use of the process of attachment in civil causes of maritime jurisdiction by courts of admiralty, as in the case before us, has prevailed during a period extending as far back as the authentic history of those tribunals can be traced. 'Its origin is to be found in the remotest history of the civil as well as of the common law.'"

See Bremena v. Card (D. C.) 38 Fed. 144.

The writ of attachment against nonresidents, therefore, being a well-recognized process in the admiralty courts, of ancient custom and frequently used, the question for determination is: Was the Supreme Court authorized and has it in fact abolished its use by rule 2, except in conjunction with a warrant for the arrest of the defendant?

The act of August 23, 1842, in section 6 (5 Stat. at Large, p. 518, c. 188 [Comp. St. 1916, § 1543]) provides:

"That the Supreme Court [of the United States] shall have full power and authority, from time to time, to prescribe and regulate, and alter, the forms of writs and other process to be used and issued in the District and Circuit Courts of the United States, and the forms and modes of framing and filing libels," pleas, "answers and other proceedings * * * in suits at common law or in admiralty and in equity pending in the said courts."

It will be noticed in the first place that the authority and directions are to prescribe and regulate, and alter, the forms of writs and other process to be used and the modes of framing and filing the various pleadings. It is possibly true that this authority would authorize the Supreme Court to abolish recognized writs, provided this was expressly done by them; but certainly, in the absence of an express provision so declaring, we should not infer that because the Supreme Court, in enumerating the various processes which might be issued from the admiralty court, coupled a writ of arrest of the defendants with a writ of foreign attachment against his goods, that it was the intention of the Supreme Court to abolish the writ of foreign attachment if the writ of arrest of the person could not be executed. Rule 2, it will be noticed, does not undertake to abolish the writ of foreign attachment. On the contrary, the rule expressly recognizes it. It says:

"In suits in personam, the mesne process may be by a simple warrant of arrest of the person of the defendant in the nature of a capias, or by warrant of arrest of the person of the defendant with a clause therein that if he cannot be found, to attach his goods and chattels to the amount sued for."

Now certainly the courts should not consider this reference to a writ of foreign attachment coupled with a capias against the defendant into a declaration by the Supreme Court that no foreign attachment should be issued if the capias was rendered unlawful by the laws of the state abolishing arrest for debt. We should be slow to hold that the Supreme Court intended to abolish such a well-recognized writ, or to forbid its use by the admiralty courts merely because, in a directory rule referring to the various writs which might be issued by the admiralty court, it has coupled this writ with a capias. When this rule was written, the Supreme Court recognized the writ of foreign attach

ment, and they also recognized the capias, and merely for the sake of convenience they coupled these two together in the language they used, without any thought, so far as I can see, of providing that the attachment should not be issued unless the capias might also be executed. I cannot bring myself to the conclusion that the Supreme Court ever meant by this coupling of these two writs in this rule to forbid the use of the attachment, unless the capias could be executed. I cannot bring myself to conclude that they ever contemplated at any time an abolition of the writ of attachment.

Not only is this true, but until the Supreme Court has expressly abolished the writ of attachment, or has expressly provided that it could only be used as a part of a capias, and in the event the capias could not be used then the attachment should not be executed, my conclusion would be that the admiralty court, whether there were or were not a rule of such court authorizing the writ, would be authorized to issue a writ of nonresident attachment. Judge Lowell, in Louisiana Ins. Co. v. Nickerson, 15 Fed. Cas. 967, says:

"The only question, therefore, is whether the Supreme Court, by giving authority to begin all personal actions by warrant to arrest, or an alternative to attach goods, etc., if the defendant cannot be found, intended to say that in cases where arrest was illegal, and so the defendant could not be found for any useful purpose of arrest, there should be no attachment. I think not. If this be the law, there is now no mode of obtaining security in a personal action, unless the debtor is not found. This may be in accordance with the law in some of the states, but it has never been so in New England. Such a construction would leave * * * a corporation defendant unprovided for in any event; for such person can never be arrested."

I agree with what Judge Lowell here says. It is true that he then proceeds to show that there was in this court a rule authorizing the writ of attachment to be issued, and he recognizes this rule and orders the attachment issued. He also calls attention to the fact that in the case of Atkins v. Fibre Disintegrating Company, Fed. Cas. No. 602, such attachment appears to have been issued. The ruling of the Supreme Court on appeal of that case has heretofore been referred to. I understand that, in addition to the rule referred to by Judge Lowell, most of the districts have a similar rule also; but there is no such rule here.

[2] Now, if the construction of rule 2 of the Supreme Court contended for is correct, then the admiralty courts have no authority to pass rules on this subject, because they will be in conflict with the rule of the Supreme Court. If, however, the rule of the Supreme Court leaves the admiralty courts authority to make rules on this subject, then this court has the right to issue this writ, whether there is a rule on the subject or not, because, the writ being one well recognized in the admiralty jurisdiction, the court, having admiralty jurisdiction conferred upon it, has also conferred upon it the power to issue the writ, whether it makes a rule on that subject or not. It seems that in many of the districts such writs are issued, either by rule or without, as shown by the following authorities: In re Devoe Mfg. Co., 108 U. S. 401, 2 Sup. Ct. 894, 27 L. Ed. 764 (N. J., 1883); Workman v. New York City, 179 U. S. 552, 573, 21 Sup. Ct. 212, 45 L. Ed. 314 (N. Y.); Robins Dry

Dock Co. v. Chesbrough, 216 Fed. 121, 132 C. C. A. 365 (C. C. A., 1st Circuit, N. Y., 1914); In re Louisville Packet Co. (D. C.) 223 Fed. 185, 187 (Ky., 1915); Clarke v. New Jersey Steam Navigation Co., Fed. Cas. No. 2,859 (C. C., R. I., 1841); Pouppirt v. Elder-Dempster Shipping (D. C.) 122 Fed. 983, 988 (E. D. Va., 1903); The Alpena (D. C.) 7 Fed. 361, 363 (E. D. Mich., 1881); The L. B. X. (D. C.) 88 Fed. 290, 293 (W. D. Mo., 1888); Cushing v. Laird, Fed. Cas. No. 3508 (S. D. N. Y., 1848); Trask v. Pelletier, Fed. Cas. No. 14,146; Stonecutter Company v. Sears (C. C.) 9 Fed. 8, 10; Bouysson v. Miller, Fed. Cas. No. 1,709 (D. C. S. C., 1802); Louisiana Ins. Co. v. Nickerson, Fed. Cas. No. 8,539 (D. C., Mass., 1874).

Not only is this true, but when we come to study rule 2, which was enacted in 1844, it provided for the issuance of a writ of capias with a clause therein authorizing the attachment of the defendant's goods, if he be not found. At this time there was no provision in these rules abolishing imprisonment for debt. Then later, in 1850, the court adds the paragraph to rule 47 (29 Sup. Ct. xliv) by which provision is made that imprisonment for debt on process issuing out 'of admiralty courts is abolished in all cases where by the laws of the state in which the court is imprisonment for debt has been or shall be hereafter abolished. This certainly shows that the court never intended to prohibit the issuance of the writ of attachment, or to abolish its use. By the rule of 1850 it abolishes only that portion of rule 2 which authorized the writ of capias.

I am therefore of the opinion that this court has the authority to issue the writ of nonresident attachment, and therefore that its issuance in this case was not improvident, but that such writ was properly issued.