**BROWN v. C. D. MALLORY & CO., et al.**

No. 7545.

Circuit Court of Appeals, Third Circuit.

June 30, 1941.

100

JONES, Circuit Judge, dissenting.

Abraham E. Freedman, of Philadelphia, Pa. (Freedman & Goldstein, of Philadelphia, Pa., on the brief), for appellant.

Edwin Longcope, of Philadelphia, Pa. (Krusen, Evans & Shaw, of Philadelphia, Pa., on the brief), for appellees.

Before BIGGS, MARIS, CLARK, JONES, and GOODRICH, Circuit Judges.

BIGGS, Circuit Judge.

The primary question presented for our determination is whether or not a seaman may maintain an action for personal injuries in admiralty in personam against his employer with foreign attachment and claim the benefits of the Jones Act[1] in a district in which his employer does not reside and in which its principal office is not located. The respondent-appellee, Swiftarrow Steamship Company, Inc., is a Delaware corporation maintaining its principal office in Delaware. There was no personal service upon any of the respondents.

In the case at bar the libel joins two causes of action: the first is one in personam framed on allegations of the employer's negligence and based upon maritime law as modified by the Jones Act; the second cause of action is an action in rem for maintenance and cure under the old maritime law without reliance upon the Jones Act. We are not concerned with the action in rem upon this appeal. We therefore will deal only with the action in personam.

The respondent-appellee, Swiftarrow Steamship Company, Inc., appeared de bene esse and moved to strike from the libel all claims and allegations related to or founded upon the Jones Act. The court below, sitting en banc, rendered a decision in favor of the respondent, D.C., 34 F.Supp. 541, and entered a decree as sought by that respondent. The appeal at bar followed.

Under the maritime law, prior to the passage of the Jones Act, a seaman who became ill or was injured in the service of his vessel could recover wages to the end of the voyage and was entitled to maintenance and cure beyond the termination of the voyage. Calmar Steamship Corp. v. Taylor, 303 U.S. 525, 58 S.Ct. 651, 82 L. Ed. 993. If he was injured due to the unseaworthiness of the vessel or by reason of defects in its equipment he could recover damages as well. The Osceola, 189 U.S. 158, 175, 23 S.Ct. 483, 47 L.Ed. 760. In any action for damages brought by the seaman for personal injuries, however, all affirmative defenses such as assumption of risk, the fellow-servant rule or contributory negligence, were available to the employer. By the express terms of the Jones Act, the injured seaman "at his election" could maintain an action at law for damages for personal injury and the affirmative defenses which theretofore had been available to his employer, were abolished. The right of the seaman to maintain an

---

[1] Section 33 of the Merchant Marine Act of June 5, 1920, c. 250, 41 Stat. 1007, 46 U.S.C.A. § 688, which amended Section 20 of the Act of March 4, 1915, c. 153, 38 Stat. 1185, so as to provide: "Sec. 20 [§ 688]. That any seaman who shall suffer personal injury in the course of his employment may, at his election, maintain an action for damages at law, with the right of trial by jury, and in such action all statutes of the United States modifying or extending the common-law right or remedy in cases of personal injury to railway employees shall apply; and in case of the death of any seaman as a result of any such personal injury the personal representative of such seaman may maintain an action for damages at law with the right of trial by jury, and in such action all statutes of the United States conferring or regulating the right of action for death in the case of railway employees shall be applicable. Jurisdiction in such actions shall be under the court of the district in which the defendant employer resides or in which his principal office is located."

action in admiralty under the Jones Act as distinguished from an action at law was established by the Supreme Court in Panama R. R. Co. v. Johnson, 264 U.S. 375, 44 S.Ct. 391, 68 L.Ed. 748.

■ Before, as after the passage of the Jones Act the seaman could enforce his substantive rights under the maritime law by a libel in admiralty or by any available common law remedy.[2] Garcia y Leon v. Galceran, 11 Wall. 185, 20 L.Ed. 74. Assuming the existence of a maritime cause of action, no limitation was imposed upon the right of the injured seaman to maintain a libel in admiralty in a suit in personam. Workman v. City of New York, 179 U.S. 552, 21 S.Ct. 212, 45 L.Ed. 314. The seaman might obtain service in admiralty in a suit in personam against an employer not residing within the district or maintaining his principal office therein by attaching the property of the employer found within the district. Atkins v. The Fiber Disintegrating Co., 18 Wall. 272, 21 L.Ed. 841. His right to pursue such a course was so ancient as to antedate rules of court. In re Devoe Manufacturing Co., Petitioner, 108 U.S. 401, 2 S.Ct. 894, 27 L. Ed. 764; Manro v. Almeida, 10 Wheat. 473, 490, 6 L.Ed. 369, and Rosasco v. Thompson, D.C., 242 F. 527. In fact, the seaman could enforce his rights in personam against the owner and in rem against the vessel in the same suit as he has attempted to do in the case at bar. Brown v. Lull, Fed.Cas. No. 2,018, 2 Summ. 443; Sheppard v. Taylor, 5 Pet. 675, 30 U.S. 675, 8 L.Ed. 269; Cutler v. Rae, 7 How. 729, 48 U.S. 729, 8 How. 615 Appx., 12 L.Ed. 890, 1221.

■ What was the effect of the Jones Act upon the prior law? In effect it created a new cause of action at law[3] (as distinguished from admiralty) in the seaman for personal injuries arising by reason of the employer's negligence as distinguished from the causes of action of ancient origin which arose from defective equipment or an unseaworthy vessel. See the Act of April 22, 1908, c. 149, § 1, 35 Stat. 65, 45 U.S.C.A. § 51, the Railway Employers Liability Act. But, and this is the important thing in the case at bar, the Jones Act was engrafted bodily upon the old maritime law. As Mr. Justice Van Devanter stated in Panama R. R. Co. v. Johnson, supra, 264 U.S. page 388, 44 S.Ct. page 394, 68 L.Ed. 748, "Rightly understood, the statute [Section 20] neither withdraws injuries to seamen from the reach and operation of the maritime law, nor enables the seaman to do so. On the contrary, it brings into that law new rules drawn from another system and extends to injured seamen a right to invoke, at their election, either the relief accorded by the old rules or that provided by the new rules. The election is between alternatives accorded by the maritime law as modified, and not between that law and some nonmaritime system." While in effect a new cause of action (or, at least a cause of action to which the employer's old defenses of the fellow-servant rule, assumption of risk and contributory negligence were no longer available to him) was given to the injured seaman by the Jones Act upon the law side of the court as distinguished from the admiralty side, in admiralty "new rules drawn from another system" were simply superimposed by the Jones Act upon existing admiralty law. The election between alternatives accorded to the injured seaman referred to by Mr. Justice Van Devanter is a choice between the remedies afforded him by the old maritime law and the remedy granted him by the Jones Act within the framework of admiralty law. In short, the right of a seaman to proceed under the Jones Act without trial by jury is a right to proceed under an existing, modified system of maritime law.

We come now to the interpretation and application of the venue provisions of Section 20 to the case at bar. Panama R. R.

[2] The Judiciary Act of 1789, Section 9, c. 20, 1 Stat. 76, Judicial Code, Section 24 (3), 28 U.S.C.A. § 41 (3), provided that the United States District Courts should have "exclusive original cognizance of all civil causes of admiralty and maritime jurisdiction * * * saving to suitors, in all cases, the right of a common law remedy, where the common law is competent to give it." Taylor v. Carryl, 20 How. 583, 61 U.S. 583, 15 L.Ed. 1028; Chappell v. Bradshaw, 128 U.S. 132, 9 S.Ct. 40, 32 L.Ed. 369.

[3] A cause of action in addition, one might say, to the two causes of action set forth in The Osceola, supra, 189 U.S. page 175, 23 S.Ct. 483, 47 L.Ed. 760, in the paragraphs numbered 1 and 2 in Mr. Justice Brown's opinion. Benedict on Admiralty, Sixth Edition, Vol. 1, Section 25, p. 46, speaks of the Jones Act as a "statutory" extension of a seaman's remedies at law.

Co. v. Johnson, supra, indicated that where the benefits of the Jones Act are invoked by an injured seaman in an action on the law side of a district court, the venue provisions of Section 20 are applicable; that is to say, the suit must be brought in the district in which the employer resides or has its principal office unless the respondent waives the personal privilege accorded to it by the venue provisions. The indication thus given was followed without question. [4] It will be borne in mind of course that the action in the Panama R. R. case was upon the law side of the district court and was not in admiralty. Where the injured seaman, however, attempted to gain the benefits of the Jones Act upon the admiralty side of the court the venue provisions of Section 20 were applied or not applied with a startling lack of unanimity. In the Eastern District of Pennsylvania it was held until the decision which we are now reviewing, that the benefits of the Jones Act were available to seamen in an action in personam in admiralty though the defendant neither resided in or had his principal place of business in the district; [5] in other words, that the venue provisions of the Jones Act apply only to suits at law in the federal courts and had no applica-

tion to suits brought in admiralty. Similar views were expressed in other jurisdictions. [6] The opposite view was stated at least three times. [7] It should be pointed out, however, that in none of the cases cited in notes 5, 6 and 7 was a writ of foreign attachment issued to compel the appearance of the respondent. No great light is thrown upon this question by an examination of the legislative history of the Jones Act. [8]

The decision of the Supreme Court in Panama R. R. Co. v. Johnson, supra, extended the scope of Section 20 to give an injured seaman an action upon the admiralty side of a district court. In the cited case the defendant urged two grounds for reversal. The first was that the District Court of the Eastern District of New York had no jurisdiction because the defendant did not have its principal office in that district. The Supreme Court held that the defendant had waived the venue requirement. The second argument was that the Jones Act was unconstitutional. The Supreme Court found no merit in this contention, Mr. Justice Van Devanter stating, 264 U.S. page 391, 44 S.Ct. page 395, 68 L.Ed. 748, "* * * the statute leaves the injured seaman free under the

---

4 See Peters v. Detroit & Cleveland Nav. Co., D.C., 24 F.2d 454; Summerall v. United Fruit Co., D.C., 11 F.Supp. 963, affirmed 2 Cir., 80 F.2d 1020, certiorari denied 298 U.S. 658, 56 S.Ct. 680, 80 L. Ed. 1384; Olafson v. Waterman Steamship Corp., D.C., 281 F. 194; Barrington v. Pacific Steamship Co., D.C., 282 F. 900; Leon v. United States Shipping Board Emergency Fleet Corp., D.C., 286 F. 681; Caceres v. United States Shipping Board Emergency Fleet Corp., D. C., 299 F. 968; Atianza v. United States Shipping Board Emergency Fleet Corp., D.C., 299 N.Y. 975.

5 See Eckert v. Socony Vacuum Oil Co., D.C., 13 F.Supp. 342; Carr v. Union Sulphur Co., 1937 A. M. C. 227, and Essigman v. Standard Oil Co. (no opinion for publication).

6 See McDaniel v. Baker Sand & Gravel Co., D.C., 24 F.2d 987; Arthur v. Compagnie Generale Transatlantique, 5 Cir., 72 F.2d 662; McKola v. McCormick S. S. Co., D.C., 24 F.Supp. 378. The case of Bennett v. Standard Oil Co. of N. J., D.C., 33 F.Supp. 871, is not strictly in point for it was there held that the appointment of a statutory resident agent for a Delaware corporation in Maryland waived the venue provisions of the Jones Act. See Md. Acts of 1937, c. 504, §§ 118,

119. Judge Chesnut, p. 873, indicated a view on the question sub judice.

7 See Stein v. Standard Oil Co. of California, D.C., 36 F.2d 258; Bannon v. Seaboard Air Line Ry. Co., D.C., 52 F.2d 886, and The Pomona, 1938 A.M.C. 1357.

8 The controversial sentence of Section 20 was added as a result of the action of a conference committee of the Senate and House of Representatives. See 59 Cong. Record, Part 7, p. 7044, and House Report 1093, 66th Congress, 2nd Session. In the "Statement of the Managers on the Part of the House", p. 35 of the report just mentioned, appears the following in respect to the amendment, "This amendment amends Section 20 of the seaman's act so as to extend the Federal Employers' Liability Act to cases of personal injury to or death of seamen. The House recedes with an amendment that jurisdiction of all actions brought under the provisions of Section 20 shall be under the court of the district in which the defendant employer resides or in which his principal office is located." We can find no reference in the debates of either House to the statute under consideration. It seems to have been dealt with entirely in committee. The language of the report, however, is really no broader than that of the statute.

general law—sections 24 (par. 3) and 256 (par. 3) of the Judicial Code [28 U.S.C.A. §§ 41(3), 371, subd. 3]—to assert his right of action under the new rules [i. e., the Jones Act] on the admiralty side of the court. On that side the issues will be tried by the court, but if he sues on the common-law side there will be a right of trial by jury. So construed, the statute does not encroach on the admiralty jurisdiction intended by the Constitution, but permits that jurisdiction to be invoked and exercised as it has been from the beginning." In short, the Supreme Court held that the advantages of the Jones Act were available to a seaman on the admiralty side of the district court and that this jurisdiction could be invoked as from the beginning. Jurisdiction of a district court in admiralty could always be invoked wherever the litigation involved injuries to a seaman at sea. As to venue in a particular district court, under the old admiralty practice, as evidenced by the Supreme Court Admiralty Rule 2, 267 F. vii; 28 U.S.C.A. following section 723, if the respondent was not found within the reach of the court but had property within the jurisdiction, a proceeding in personam in admiralty could be begun against him by a writ of foreign attachment. In other words, venue in admiralty was not dependent upon the presence of the respondent in person or upon the maintenance of a principal office within a particular district but could be invoked by reason of the presence of property of the respondent within the district. McGahern v. Koppers Coal Co., 3 Cir., 108 F.2d 652; Kingston Dry Dock Co. v. Lake Champlain Transp. Co., 2 Cir., 31 F.2d 265; Rosasco v. Thompson, D.C., 242 F. 527.

■ Are the substantive rights granted seamen by Section 20 so bound up with the venue provisions of the section as to be indivisible? Assuming that it was the intention of Congress, as indicated by the legislative history of the section that all actions at law brought under the Jones Act should be under the court of the district in which the defendant employer resides or in which his principal office is located, must we conclude that Congress intended the venue provisions to apply to all actions brought under the Jones Act including admiralty actions? The respondents strongly urge that we must. They say that the phrase "such actions" appearing in the second sentence of Section 20 which refers

to venue must be given the same meaning as the similar phrase in the first sentence of the section which the Supreme Court in the Panama R. R. case held referred to "the object of the suit rather than the jurisdiction in which it is brought", and hence applied to suits in admiralty as well as at law. We think, however, that the phrase "such actions" in the venue sentence does not have this objective meaning but refers to the "action for damages at law" in the courts of the United States to which the section expressly refers. It is one thing to hold, as the Supreme Court did in the Panama R. R. case, that Congress must have intended to extend by implication into the substantive law of admiralty the right of action at law which the section confers upon seamen, when such extension may be necessary to overcome a constitutional objection to the right of action conferred at law. It is quite another thing to impute to Congress the intention by implication to import into the admiralty procedure a venue restriction which under the express language of the section applies only to law actions, and the implied extension of which to admiralty is neither necessary to sustain its validity at law nor in harmony with the historic venue of courts of admiralty. We are fortified in our conclusion by the decision in Bainbridge v. Merchants & Miners Transportation Co., 287 U.S. 278, 53 S.Ct. 159, 77 L. Ed. 302, in which the Supreme Court held that the venue provisions of Section 20 did not apply to a suit brought under the section in a state court, thus in effect holding that the venue provisions of the Jones Act could be divided out of and set apart from the substantive rights given to the injured seaman. The Supreme Court gave the injured stewardess, suing at law in a Court of Common Pleas of Philadelphia County, Pennsylvania, a right to recover under the Jones Act and permitted the local statutes to determine the question of venue. The fact that the Jones Act incorporates and bases its remedy upon the Federal Employers' Liability Act, 35 Stat. 65, 45 U.S.C.A. § 51 et seq., which in turn expressly provides that the state court shall have concurrent jurisdiction in all cases arising under the Employers' Liability Act, 36 Stat. 291, 45 U.S.C.A. § 56, does not seem to us to subtract from the force of this conclusion. We conclude that there should not be read into Section 20 of the Act of 1915, as amended by the Jones Act, an implied repeal, effective only as to those suits

in admiralty which are brought under that section, of the process of foreign attachment in suits in personam so well known to and established in the maritime law.[9]

The venue restriction contained in the second sentence of Section 20 when applied to actions at law is in consonance with the existing venue provisions in actions at law, namely that such actions must be brought in the district in which the defendant is an inhabitant.[10] That very venue restriction if brought into the law of admiralty would be wholly out of harmony with the rules of venue always heretofore applied in admiralty, namely, that a suit in personam may be brought in any district within which process can be served upon the respondent or in which his property or credits can be attached,[11] and would thus greatly restrict the venue of courts of admiralty. We think that Congress did not have such a result in mind when it passed the Jones Act. Accordingly we hold that an action in personam in admiralty under the Jones Act may be commenced and maintained by the injured seaman in a district in which the defendant employer does not reside and in which its principal office is not located.

The respondents further contend, however, citing Plamals v. The Pinar Del Rio, 277 U.S. 151, 48 S.Ct. 457, 72 L. Ed. 827, that since the Jones Act imposes only personal liability, its benefits cannot be asserted in a suit in which appearance is compelled by attaching a ship which is made liable to answer the judgment if one is procured. That the cited case holds that a seaman does not have an action under Section 20 in admiralty in rem against a vessel, is indubitable, but we are unable to see the cogency of an argument which asserts that a proceeding in personam begun by foreign attachment against a vessel is the equivalent of a suit in rem against that vessel. The suit at bar is no more a proceeding in rem than would be an action brought in a state court against a nonresident debtor in which it was sought to compel appearance by seizing the debtor's property within the state by foreign attach-

ment.[12] Since the injured seaman has the right to bring an action in personam in admiralty invoking the benefits of the Jones Act in a district where his employer neither resides nor has his principal office, he has the right to advance that action by all means legally available. As we have indicated he may attach a ship to compel appearance and to have a res out of which a judgment may be paid. See Manro v. Almeida, supra, 10 Wheat. page 496, 6 L.Ed. 369; National Board of Marine ·Underwriters v. Melchers, D.C., 45 F. 643.

We cannot agree with the conclusion of the court below that the decision in Plamals v. The Pinar Del Rio, supra, disposes of the question of the application of the venue requirements of the Jones Act to the suit at bar. The court below in its opinion stated, 34 F.Supp. at page 545, "The Supreme Court reached the conclusion that an in rem proceeding could not be had under the Jones Act in view of the language of the venue provision of the Act, which it deemed applicable, although the Pinar Del Rio case was on the admiralty side." and cited the language of the Supreme Court, 277 U.S. at page 155, 48 S. Ct. at page 458, 72 L.Ed. 827, to the effect that Section 20 and other statutes defining the liability of masters to employees, were originally intended to be enforced in actions at law and "* * * imposed personal liability, and gave no lien of any kind." Section 20 itself of course gives no lien of any kind, but that fact does not prevent the libellant from maintaining a suit in admiralty in personam under the Jones Act and availing himself of the ancient right to compel the appearance of the respondent by foreign attachment. An action in personam in admiralty begun by foreign attachment does not become an action in rem when property is seized. The lien of the attachment is in no wise the equivalent of the ordinary maritime lien enforced against the vessel by an admiralty proceeding in rem. The maritime lien is a secret one with qualities of paramountcy which may operate against general creditors or purchasers without notice. The

---

9 In this connection it is interesting to observe that the Admiralty Rules of the Supreme Court in nowise have been amended so as to limit process by foreign attachment where the benefits of the Jones Act have been invoked.

10 Judicial Code, Section 51 as amended, 28 U.S.C.A. § 112.

11 In re Louisville Underwriters, Petitioners, 134 U.S. 488, 10 S.Ct. 587, 33 L. Ed. 991.

12 Though the right to the writ of foreign attachment stems out of different historical backgrounds in the two instances, the effect of the writ when issued is very similar.

lien secured by the appellant in the case at bar has no such attributes. It is simply a lien resulting from the attachment of the thing seized and possesses no quality of paramountcy. In Plamals v. The Pinar Del Rio, supra, the Supreme Court stated nothing more than that the prior existence of a maritime lien is essential to every admiralty action in rem and that the cause of action of a seaman arising under the Jones Act was not based upon a lien against the ship and could not be enforced in admiralty in a suit in rem.

The decree of the court below is reversed and the cause is remanded with directions to reinstate in the libel all claims and allegations related to or founded upon the provisions of the Jones Act, and to proceed in conformity with this opinion.

JONES, Circuit Judge (dissenting).

The majority hold that a suit in admiralty for the enforcement of a right of action under Section 20 of the Jones Act, as amended,[1] is not subject to the requirement of the same section that "Jurisdiction [meaning venue[2]] in such actions shall be under the court of the district in which the defendant employer resides or in which his principal office is located." With that conclusion, I am unable to agree and, therefore, note my dissent. The reasons in support of my view will be stated.

The question involves the construction of a federal statute which is general in the extent of its applicability. As the majority opinion points out (see cases there cited), there has been a division of opinion among the District Courts where the present question has been up for decision. And, as the majority opinion also observes (see cases there cited), there has been unanimity among the courts when applying the venue requirement of Section 20 of the Jones Act, as amended, to actions at law thereunder. Of the correctness of these latter rulings there can be no doubt and, certainly, none since the decision of the Supreme Court in Panama Railroad Company v. Johnson, 264 U.S. 375, 44 S.Ct. 391, 68 L.Ed. 748. There, in an action at law, the precise question was raised and the otherwise improper venue of the case was held to have been (by general appearance) waived by the defendant as a defendant

may do,—the right to plead restricted venue being a right personal to a defendant. As the Supreme Court said in the Panama case, supra, 264 U.S. at page 385, 44 S.Ct. at page 393, 68 L.Ed. 748,—"such a provision [limiting venue] merely confers on the defendant a personal privilege, which he may assert, or may waive, at *his* election, * * *." (Emphasis supplied.) In passing, it should be noted that one of the effects of the decision and order of the majority in the instant case is to make the limitation of venue (notwithstanding the statutorily prescribed requirement of the Jones Act) depend not upon the election of the defendant but upon the choice of the plaintiff, accordingly as he sues at law or in admiralty. Of course, it can be no less onerous to a defendant to appear and answer in a district foreign to his residence or principal office with respect to one and the same cause of action no matter whether the cause be filed in a court of law or a court of admiralty.

What, then, is the necessity compelling the construction which the majority adopt? Certainly, the plain and understandable words of the statute, themselves, furnish no inspiration or even suggestion for the conclusion. Section 20 of the Jones Act, as amended, makes no express distinction between an action at law or a suit in admiralty for the enforcement of a right under that statute. This seems to me to be manifest from the Supreme Court's construction of Section 20, as amended, in the Panama case, supra. There, one of the things which enabled the Supreme Court to say that the right conferred by the Jones Act was cognizable in admiralty as well as at law was the fact that the phrase, "in such action", as used in the first sentence of the Section meant "an action to recover damages for such injuries". Thereby, as the Supreme Court concluded, when Congress thus used the phrase, "in such action", it must have had in contemplation a suit in admiralty as well as an action at law. Why, then, when Congress provided in the second sentence of Section 20, as amended, that the venue "in such actions" shall be in the district of the defendant's residence or principal office, did it not also still have in contemplation a suit in admiralty as well as an action at law? It is

---

[1] Act of March 4, 1915, c. 153, § 20, 38 Stat. 1185, as amended by the Act of June 5, 1920, c. 250, § 33, 41 Stat. 1007, 46 U.S.C.A. § 688.

[2] See Panama Railroad Company v. Johnson, 264 U.S. 375, 384, 385, 44 S. Ct. 391, 68 L.Ed. 748.

unnecessary to resort to rules of construction to support the proposition that the same words when used twice in the same section of the same statute mean the same in each instance unless a different meaning therefor has been legislatively defined therein or is otherwise clearly indicated. But, no different meaning for the phrases, "in such action" and "in such actions", in Section 20 is either prescribed or indicated. The majority meets the difficulty by saying that,—"We think, however, that the phrase 'such actions' in the venue sentence does not have this objective meaning [purpose of suit] but refers to the 'action for damages at law' in the courts of the United States to which the section expressly refers." With due respect for the majority, the conclusion just quoted is manifestly not admissible without disregarding the Supreme Court's construction of the "in such action" phrase in the Panama case. The antecedent phrase, "action for damages at law", to which the majority now points, bore the same position and same relation in the Section when it was before the Supreme Court in the Panama case, but without the influence which the majority now attributes to it.

The majority opinion reasons that, inasmuch as "venue in admiralty was not dependent upon the presence of the respondent in person or upon the maintenance of a principal office within a particular district but could be invoked by reason of the presence of property of the respondent within the district," a suit in admiralty under the Jones Act may be maintained wherever property of the defendant may be found even though outside of the district of the defendant's residence or principal office. As supporting the conclusion thus derived the majority point to an expression in the Panama case. The Supreme Court there, having held that a right of action under the Jones Act was cognizable in admiralty as well as at law, said, 264 U.S. page 391, 44 S.Ct. page 395, 68 L.Ed. 748, —"So construed, the statute does not encroach on the admiralty jurisdiction intended by the Constitution, but permits that jurisdiction to be invoked and exercised as it has been from the beginning." Consequently, the majority say that a suit in admiralty under the Jones Act must be attended by all of the rights under the "old rules" of maritime law. Is that what was meant in the Panama case? I think not. After all, the question involved in the Pan-

ama case grew out of an action at law under the Jones Act and not a suit in admiralty.

Thus the majority's conclusion is made to rest upon an inference as to what an expression in the Panama case (entirely incidental to the question there involved) was intended to embrace. More important to the present question, it seems to me, is what was said in the Panama case, 264 U.S. at pages 387–389, 44 S.Ct. at page 394, 68 L.Ed. 748:

"The statute is concerned with the relative rights and obligations of seamen and their employers arising out of personal injuries sustained by the former in the course of their employment. Without question this is a matter which falls within the recognized sphere of the maritime law, and in respect of which the maritime rules have differed materially from those of the common law applicable to injuries sustained by employees in nonmaritime service. But, as Congress is empowered by the constitutional provision to alter, qualify or supplement the maritime rules, there is no reason why it may not bring them into relative conformity to the common-law rules or some modification of the latter, if the change be country-wide and uniform in operation. Not only so, but the constitutional provision interposes no obstacle to permitting rights founded on the maritime law or an admissible modification of it to be enforced as such through appropriate actions on the common-law side of the courts—that is to say, through proceedings in personam according to the course of the common law. * * * [Cases cited]

"Rightly understood, the statute neither withdraws injuries to seamen from the reach and operation of the maritime law, nor enables the seaman to do so. On the contrary, it brings into that law new rules drawn from another system and extends to injured seamen a right to invoke, at their election, either the relief accorded by the old rules or that provided by the new rules. The election is between alternatives accorded by the maritime law as modified, and not between that law and some nonmaritime system."

But, whatever may have been intended in the Panama case or what the inferences to be drawn therefrom may be as to the extent to which a suit in admiralty under the Jones Act is attended by rights under the

old rules of maritime law, at least one of such rights does not so attend, and that is the right to proceed in rem. See Plamals v. S.S. "Pinar Del Rio" etc., 277 U.S. 151, 48 S.Ct. 457, 72 L.Ed. 827. This is not to suggest that the proceeding (admiralty) in the instant case which was instituted on a writ of foreign attachment is in any relevant sense a proceeding in rem. Undoubtedly, foreign attachment is available to a plaintiff in an action in personam to compel the defendant's appearance. The unavailability of foreign attachment in a case such as the present is due to the fact that, as the venue must be in the district of the defendant's residence or principal office, the non-residence essential to foreign attachment cannot be present.

That a seaman may not proceed in rem in admiralty under the Jones Act was squarely ruled by the Supreme Court in Plamals v. S.S. "Pinar Del Rio", supra. Yet, the right to proceed in rem is a right a seaman has in admiralty under the old maritime rules. Not only is the Pinar Del Rio case important as demonstrating that, when suing in admiralty under the Jones Act, all of the rights under the old rules do not attend the plaintiff but, more important still, one of the reasons assigned by the Supreme Court for its ruling ·in the Pinar Del Rio case (in admiralty) was that the Jones Act "expressly provided that the employer might be sued only in the district where he resides or has his principal office." 277 U.S. page 156, 48 S.Ct. page 458, 72 L.Ed. 827. And then, the Supreme Court said,—"This provision [venue] repels the suggestion that the intention was to subject the ship to in rem proceedings. Generally, at least proceedings of that nature may be brought wherever the ship happens to be." Thus, the venue requirement of Section 20 was operative in admiralty to the extent of helping to eliminate an in rem proceeding from admiralty's scope when enforcing a right under the Jones Act.

The unavailability of another of the old rules under maritime law, when suing in admiralty under the Jones Act, suggests itself and that is the rule with respect to the limitation of an action. Under the old maritime rules the timeliness of a suit in admiralty for damages, whether for maintenance and cure or for injuries due to the unseaworthiness of a boat, rests in the discretion of the court. It can be of no present moment that a judge in admiralty in passing upon the timeliness of an action brought under the old maritime rules may reason by analogy from general or local statutes of limitations. The fact remains that the limitation in admiralty depends upon an exercise of judicial discretion and not upon the proscription of a statute. The limitation in the Employers' Liability Act, from which the Jones Act derives by express adoption, is now three years. Amendment of August 11, 1939, c. 685, § 2, 53 Stat. 1404, 45 U.S.C.A. § 56. Is it to be suggested that a seaman may sue in admiralty under the Jones Act when his right to sue at law for the same cause is gone? Such would necessarily be the possibility if all of the old maritime rules attend a suit in admiralty under the Jones Act. But that cannot be, for it has been held time and time again by both Federal and State courts (the jurisdiction is concurrent) that the limitation prescribed by the Employers' Liability Act and, by the same token, the Jones Act is a limitation upon the right, and not the remedy, and that, when the period of limitation has expired without the institution of suit, the right of action is extinguished. The statute provides,—"No action shall be maintained * * * unless commenced within three years from the day the cause of action accrued." And so, again it would seem that admiralty's exercise of its jurisdiction "as it has been from the beginning" was not intended in the Panama case to mean that in enforcing a right under the Jones Act in admiralty all of the old rules of maritime law should obtain.

Finally, the majority say that they are fortified in their conclusion by the decision of the Supreme Court in Bainbridge v. Merchants & Miners Transportation Co., 287 U.S. 278, 53 S.Ct. 159, 77 L.Ed. 302. The Bainbridge case was an action at law under the Jones Act, instituted in a State court. All that case held was that the word "district" in the venue provision of Section 20, as amended, did not refer to the courts of a State. After pointing out that the term "district" was not apposite in describing the judicial divisions in some States, the Supreme Court said, 287 U.S. pages 280, 281, 53 S.Ct. page 160, 77 L.Ed. 302,—"* * * we should be slow to impute to Congress an intention, if it has the power, to interfere with the statutory provisions of the various states fixing the venue of their own courts. It follows that the venue should have been determined by

the trial court in accordance with the law of the state." Obviously, the ruling was limited to a construction of Section 20 with respect to its effect upon the venue in State courts and no more. Moreover, the Supreme Court had said earlier in the Bainbridge opinion (287 U.S. page 280, 53 S.Ct. page 159, 77 L.Ed. 302) that "the correct construction of the provision [venue under the Jones Act] limits it to the courts of the United States." The description, "courts of the United States", at least does not serve to limit the courts, thus referred to, to only courts sitting at law. Certainly the Bainbridge case furnishes the majority no support.

For the reasons given, I should affirm the decree of the District Court which, on the respondent's motion and because of a want of proper venue, struck from the libel all claims or allegations related to or founded upon the provisions of the Jones Act.