PLAMALS *v.* S. S. " PINAR DEL RIO," ETC.

No. 225.   Argued February 27, 1928.—Decided May 14, 1928.

Mr. *Charles A. Ellis*, with whom Mr. *Silas B. Axtell* was on the brief, for petitioner.

152

An American court of admiralty having jurisdiction of a cause under the circumstances here involved, should apply the American Maritime Law to the case as the *lex loci delicti*.

In a suit in an American court, § 33 of the Jones Act is applicable to a tort which occurs upon a foreign vessel while lying in the territorial waters of the United States, and applicable to this case.

The right given to seamen under § 33 of the Jones Act to recover for personal injuries suffered in the course of their employment as the result of negligence, may be enforced in admiralty by a proceeding *in rem*, in accordance with the principles of the maritime law under which a lien and right *in rem* is recognized in favor of seamen suing for personal injuries. The Jones Act is not a local statute of 'a State merely seized on by the courts as supplementary to the maritime law in absence of any similar right afforded by that law. *Cf. The Corsair*, 145 U. S. 335; *The Albert Dumois*, 177 U. S. 240; *The Hamilton*, 207 U. S. 398; *The J. E. Rumbell*, 148 U. S. 1. On the contrary, it is a part of the general maritime law, enacted by Congress, the legislative body empowered to declare and modify the maritime law, and concerns itself only with seamen and their own and their employers' relative rights—a subject peculiarly maritime—and is uniformly applicable throughout the country wherever the American maritime law applies. *Panama R. R. Co.* v. *Johnson*, 264 U. S. 375.

The right of an injured seaman to a lien, or to proceed against the vessel *in rem* to enforce such rights to indemnity as he had under the maritime law prior to the enactment of the Jones Act, is well recognized. *The Lafayette*, 269 Fed. 917.

The statute leaves the seaman free under the general maritime law to enforce his right under the new rules by proceeding *in rem* on the admiralty side of the court,

and permits the jurisdiction of the admiralty court to be invoked and exercised through a proceeding *in rem,* " as it has been from the beginning " in cases involving personal injury to a seaman in the course of his employment on a ship. *The Osceola,* 189 U. S. 158; *International Stevedore Co.* v. *Haverty,* 272 U. S. 50; *Sparling* v. *United States, (The Princess Matoika),* 1925 A. M. C. 1547.

Under the general maritime law, independent of the Jones Act, libelant was entitled to recover for respondent's failure to supply and keep in order, proper appliances, including a proper bos'n's chair and proper gantline, properly rigged, and for the unseaworthiness of the vessel in this respect.

*Mr. Cletus Keating,* with whom *Mr. Vernon S. Jones* was on the brief, for respondent.

Petitioner's rights are governed by British law, the law of the ship's flag.

No maritime lien was created, and the rights of the petitioner would be a suit either at law or in admiralty against his employer. *Panama Railroad Co.* v. *Johnson,* 264 U. S. 375; *Western Fuel Co.* v. *Garcia,* 257 U. S. 233; *The Corsair,* 145 U. S. 335; *The Albert Dumois,* 177 U. S. 240; Benedict on Admiralty, 5th ed., Vol. 1, p. 215.

Under the British law, petitioner had no lien against the vessel which would support a libel *in rem.* Even if American law as laid down by this Court in *The Osceola,* 189 U. S. 158, is applicable to this case, petitioner failed to make out any cause of action because the accident was due to the negligence of a fellow servant.

MR. JUSTICE McREYNOLDS delivered the opinion of the Court

Plamals, the petitioner, a subject of Spain, belonged to the crew of the British ship " Pinar Del Rio." She was

anchored at Philadelphia, April 27, 1923. He was being hoisted up to paint the smoke stack; a rope broke; he fell to the deck and sustained serious injuries. The accident resulted from the negligence of the mate who selected a defective rope. An abundant supply of good rope was on board.

Six months after the accident Plamals began this proceeding *in rem* against the ship in the District Court, Southern District of New York. The libel alleged that his injuries " were due to the fault or neglect of the said steamship or those in charge of her in that the said rope was old, worn and not suitable for use, in that libellant was ordered to perform services not within the scope of his duties, and in other respects that libellant will point out on the trial of this action."

There is nothing to show that painting the smoke stack was beyond the scope of the duties assumed.

In the District Court the petitioner asserted by his proctor that he claimed under Sec. 33, Jones Act, 41 Stat. 1007, which follows—.

" That section 20 of such Act of March 4, 1915, be, and is, amended to read as follows:

' Sec. 20. That any seaman who shall suffer personal injury in the course of his employment may, at his election, maintain an action for damages at law, with the right of trial by jury, and in such action all statutes of the United States modifying or extending the common law right or remedy in cases of personal injury to railway employees shall apply; and in case of the death of any seaman as a result of any such personal injury the personal representative of such seaman may maintain an action for damages at law with the right of trial by jury, and in such action all statutes of the United States conferring or regulating the right of action for death in the case of railway employees shall be applicable. Jurisdiction in such actions shall be under the court of the district in which the

defendant employer resides or in which his principal office is located.' "

The District Court ruled that the rights and liabilities of the parties were fixed by the law of the ship's flag and was of opinion that the British Workmen's Compensation Act afforded the only remedy. It accordingly dismissed the libel. The Circuit Court of Appeals held that a lien against the vessel is essential to every proceeding *in rem* against her; and that no such lien arose by reason of Sec. 33 of the Jones Act in favor of the injured seaman. Upon that ground it affirmed the questioned decree.

We agree with the view of the Circuit Court of Appeals and find it unnecessary now to consider whether the provisions of Section 33 are applicable where a foreign seaman employed on a foreign ship suffers injuries while in American waters.

The record does not support the suggestion that the " Pinar Del Rio " was unseaworthy. The mate selected a bad rope when good ones were available.

We must treat the proceeding as one to enforce the liability prescribed by Sec. 33. It was so treated by petitioner's proctor at the original trial; and the application for certiorari here spoke of it as based upon that section. The evidence would not support a recovery upon any other ground.

Sec. 20, Act of March 4, 1915 (38 Stat. 1185), originally provided—" That in any suit to recover damages for any injury sustained on board vessel or in its service seamen having command shall not be held to be fellow-servants with those under their authority." *Chelentis* v. *Luckenbach Steamship Co.* (1918), 247 U. S. 372, 384, pointed out that this imposed no new liability upon the shipowner.

Sec. 33 brings into our maritime law the provisions of certain statutes which define the liability of masters to employees originally intended to be enforced in actions at

law. They imposed personal liability and gave no lien of any kind. The statute which extended them to seamen expressly provided that the employer might be sued only in the district where he resides or has his principal office. This provision repels the suggestion that the intention was to subject the ship to *in rem* proceedings. Generally, at least, proceedings of that nature may be brought wherever the ship happens to be.

The ordinary maritime privilege or lien, though adhering to the vessel, is a secret one which may operate to the prejudice of general creditors and purchasers without notice and is therefore *stricti juris*. It cannot be extended by construction, analogy or inference. The *Corsair*, 145 U. S. 335, 347; The *Albert Dumois*, 177 U. S. 240, 257; *Osaka Shosen Kaisha* v. *Lumber Co.*, 260 U. S. 490, 499.

*Panama R. R. Co.* v. *Johnson*, 264 U. S. 375, 386, 391, declares—Sec. 33 " is concerned with the relative rights and obligations of seamen and their employers arising out of personal injuries sustained by the former in the course of their employment." " The injured seaman is permitted but not required to proceed on the common-law side of the court." " The statute leaves the injured seaman free under the general law—Secs. 24 (par. 3) and 256 (par. 3) of the Judicial Code—to assert his right of action under the new rules on the admiralty side of the court."

In the system from which these new rules come no lien exists to secure claims arising under them and, of course, no right to proceed *in rem*. We cannot conclude that the mere incorporation into the maritime law of the rights which they create to pursue the employer was enough to give rise to a lien against the vessel upon which the injury occurred. The section under consideration does not undertake to impose liability on the ship itself, but by positive words indicates a contrary purpose. Seamen may invoke, at their election, the relief accorded by the old

rules against the ship, or that provided by the new against the employer. But they may not have the benefit of both.

.To subject vessels during all the time allowed by the statute of limitations to secret liens to secure undisclosed and unlimited claims for personal injuries by every seaman who may have suffered injury thereon would be a very serious burden. One desiring to purchase, for example, could only guess vaguely concerning the value. "An Act to provide for the promotion and maintenance of the American Merchant Marine " ought not to be so construed in the absence of compelling language.

The judgment of the court below must be affirmed.

*Affirmed.*