## MAHNICH v. SOUTHERN S. S. CO.

### No. 261.

District Court, E. D. Pennsylvania.

July 10, 1941.

Freedman & Goldstein, of Philadelphia, Pa., for plaintiff.

Rawle & Henderson, of Philadelphia, Pa., for defendant.

KIRKPATRICK, District Judge.

This is an action in admiralty for indemnity under the maritime law and for maintenance and cure, brought by a seaman injured at sea in the course of his employment on the respondent's vessel, Wichita Falls. At the close of the trial the Court orally made certain fact findings, and awarded the libellant $700 on his claim for indemnity and $300 for cure and maintenance. The indemnity awarded was for pain and suffering only, all items

of loss of wages and loss of earning power being disallowed.

The respondent has filed a petition for reargument, which may be treated as a motion to modify or amend the Court's findings and award. It is directed exclusively to the findings and award in respect of the claim for indemnity, and does not challenge the amount of award for maintenance and cure. The libellant has filed a motion which may be treated as a request to amend the findings by increasing the amount of the award for cure and maintenance.

■ I have carefully reviewed the testimony, and am now convinced that my finding that the ship was unseaworthy was erroneous, and that the libellant is not entitled to recover anything upon his claim for indemnity. I shall therefore revise the findings of fact, and now find as follows:

On August 17, 1934, the libellant, then an able seaman on board the Wichita Falls, was instructed to paint the front of the pilot house, using a stage which consisted of a board weighing about 50 or 60 pounds, rigged from both ends by ropes which ran across the top of the pilot house and were fastened aft. One of the ropes broke at the point where it passed over the edge of the pilot house, and the libellant fell to the deck and sustained an injury to his left foot.

The rope was 1¼ to 1½ inches in diameter, and, had it been sound, it would have been adequate to support the stage together with the two men and the paint pails. There was no fault in the manner in which the stage had been rigged, and the ropes were protected against chafing at the corners of the pilot house by rounded blocks of wood.

The rope had, under the directions of the mate, been cut by the boatswain from a coil of some 1,500 feet stored in the Lyle Gun box, intended to be used with the Lyle life-saving apparatus. It had been stored there for slightly over two years, had been new when stored, and had never been used for any purpose. Two lengths of 50 feet were taken from it. The portion thus selected was, in spite of the examination of it by the boatswain and mate, unquestionably rotten or defective at the point at which it broke. There is no evidence that any of the 1,400 feet which remained in the box was bad. In fact the libellant's own testimony was that the

length which broke "looked pretty good, almost new; it was a little bit yellow, but the rope was looking good except that part which was stored up." (The word "stored" is a stenographic error. The word used was "tore.") Also, there was other rope on board—a coil of ¾ inch and another of 2¾ inch rope, the latter being the rope usually used for rigging scaffolds, etc., and being brand new.

Thus the case comes squarely within the rule stated by the Supreme Court in the Pinar del Rio case, Plamals v. The Pinar Del Rio, 277 U.S. 151, 48 S.Ct. 457, 458, 72 L.Ed. 827: "The record does not support the suggestion that the Pinar Del Rio was unseaworthy. The mate selected a bad rope when good ones were available." See, also, The Birkenhead, 51 F.2d 116, decided by this Court.

■ The basis of a seaman's claim for indemnity under the maritime law in a case like this is the unseaworthiness of the ship. The ship will not be presumed to be unseaworthy and the burden is upon him to prove it. He does not meet this burden merely by showing that an instrumentality furnished him was defective, where it also appears that such instrumentality was selected by a ship's officer or another seaman from a large quantity not shown to be in any way defective or unsuitable.

In the present case the libellant's injury may be traced to the negligence of the mate and boatswain, who, having selected a portion of rope and having failed to observe that it had a rotten spot, furnished it to the plaintiff as part of the equipment for his work.

I therefore now make the finding that the Wichita Falls was not unseaworthy and conclude as a matter of law that the libellant is not entitled to recover anything for indemnity.

■ The libellant is not entitled to any increase in the award for cure and maintenance. In fact, it might easily have been less, but I understand that the respondent does not challenge it except on the ground of laches.

■ On the question of laches, I find that the libellant's delay in bringing this action was excusable, and that it has not been seriously prejudicial to the respondent. All the witnesses to the accident were available and called, the circumstances are

really undisputed, and, since the award for cure and maintenance is solely for the period from June, 1938, to July, 1940, I do not believe that anything is lost by not having the testimony of the physicians who took care of the libellant shortly after his injury. The real question is what was his condition as of 1938–40, and what is his condition now.

The facts relevant to maintenance and cure are as follows: The libellant left the ship on September 4, 1934, at the end of the voyage on which he was injured. He was disabled and received medical attention from that time until December, when he want back upon the ship as an able-bodied seaman. For this period of disability his employer has already paid him full wages and an additional $15 for medical expenses, so that it need be given no further consideration.

From December, 1935, until May, 1936, he continued in the employ of the respondent, as an able seaman, his wages being gradually increased from the $52 he was earning at the time of his injury to $62.-50. The work that he did was not the full work of an able bodied seaman, but did involve a large number of duties about the ship which made him a great deal more than a mere pensioner on board.

In May, 1936, he voluntarily left the respondent's employment to take a job as a painter for the American Engineering Company at $24 per week.

When he left he was given to understand that he had a good prospect of re-employment with the line whenever he should apply. Of course he did not wish to jeopardize his chance of a job, and that was the reason he did not bring this action earlier. Considering his situation it seems a good enough excuse to avoid the strict application of the statute of limitations as a basis for the defense of laches.

He held his job with the Engineering Company for about two years. His foot gave him some trouble, but apparently did not substantially interfere with his carrying on his work or impair his earning power, and his leaving was not attributable to the injury. He then went back to the respondent and asked for employment, but found that there was nothing for him.

He was unemployed from June, 1938, to July, 1940. During this time he made a number of visits to his own physician for medical treatment. In July, 1940, he took his present employment as night watchman at $23.50 a week. He has kept it ever since. Obviously his foot, while it may and no doubt does give him some pain and inconvenience, does not interfere seriously with performing his work, since he makes a tour of the plant every half hour, walking about half a mile on each occasion and covering over 182 steps, up and down, in the course of each tour.

The injury produced a certain abnormality in the structure of the bones of his foot. This abnormality is permanent and has been permanent for several years. No doctor has ventured the opinion that his foot can be restored to normal. One thought that diathermy was "worth trying," and it is agreed that the pain and inconvenience from which he suffers at times can be relieved by treatment.

Upon the foregoing state of facts and having in mind the decision of the Circuit Court of Appeals of this Circuit in the case of Frank B. Loverich v. Warner Company, March 17, 1941, 118 F.2d 690, together with the statement of the Supreme Court of the United States in Calmar Steamship Corporation v. Taylor, 303 U. S. 525, 58 S.Ct. 651, 82 L.Ed. 993, that if a disease proves to be incurable, there is no basis for extending cure and maintenance beyond a fair time after the voyage as may be expected to effect such improvement as is possible, I think that the award of $300 for cure and maintenance is ample, and conclude as a matter of law that the libellant is not entitled to have it increased.

A decree may be submitted.

If separate findings and conclusions are desired, requests may be presented in accordance with this opinion.