### MAHNICH v. SOUTHERN S. S. CO.
### No. 7928.

Circuit Court of Appeals, Third Circuit.

Argued July 9, 1942.

Reargued Nov. 16, 1942.

Decided May 5, 1943.

For former opinion see, 129 F.2d 857.

Abraham E. Freedman, of Philadelphia, Pa. (Freedman & Goldstein, of Philadelphia, Pa., on the brief), for appellant.

Joseph W. Henderson, of Philadelphia, Pa. (Rawle & Henderson, and Thomas F. Mount, all of Philadelphia, Pa., on the brief), for appellee.

Before BIGGS, MARIS, and GOODRICH, Circuit Judges.

GOODRICH, Circuit Judge.

The libellant brought an action in admiralty under the general maritime law to recover for indemnity by reason of injuries sustained by an alleged unseaworthy appliance and for cure and maintenance. We are not presently concerned with the latter cause of action.[1] The injuries complained of were received while libellant was engaged in a painting job upon the ship of which he was a member of the crew. The injuries were received when the rope supporting the stage upon which he was working broke throwing him to the deck below. The rope had been selected for use by the mate of the ship. It was taken from the Lyle gun box and had not theretofore been used. It may be assumed, for the purpose of discussion here, that the failure to detect the weakness of the rope was negligence on the part of the officer who selected it for the purpose used.

The libellant's claim would obviously be an appropriate one for redress under the provisions of the Jones Act[2] were it not for the fact, as his counsel concedes, that the action was begun too late. His claim for recovery, therefore, rests upon the maritime law and the basis for the claim is alleged unseaworthiness (The Os-

ceola, 1903, 189 U.S. 159, 23 S.Ct. 483, 47 L.Ed. 760) of the vessel because the rope was defective. There was, however, an ample supply of good rope on board the ship at the time of the acts complained.

The respondent contends that the decision in Plamals v. The Pinar Del Rio, 1928, 277 U.S. 151, 48 S.Ct. 457, 72 L.Ed. 827, settles the question of the libellant's claim adversely to the latter. That case also involved an injury to a seaman which was sustained while he was engaged in working on a paint job. The rope broke, the ·injured man was hurt when he fell to the deck. There, too, the accident occurred when the mate selected a bad rope and an abundant supply of good rope was on board. The greater part of the discussion by the Supreme Court concerns the question whether in a suit under the Jones Act a libel in rem could be had and this the Supreme Court decided in the negative. The Court also, however, stated that the record did not support the suggestion that the "Pinar Del Rio" was unseaworthy. "The mate selected a bad rope when good ones were available." 277 U.S. at page 155 48 S.Ct. at page 458, 72 L.Ed. 827. The libellant says that this was only dictum by Mr. Justice McReynolds who wrote the opinion of the Court. We think it cannot be so lightly dismissed. The claim that recovery could be had under the general maritime law for injury sustained for lack of seaworthiness of the vessel was fully presented by the appellant in his brief in the Supreme Court, as an inspection of that brief will show. It also appears in the summary of his argument given in the official report of the decision of the Supreme Court. (277 U.S. 151, 153, 48 S.Ct. 457, 72 L.Ed. 827.) While the opinion, it is true, does not discuss the matter at length we do not think that the authority of the case as a decision on this point can be disregarded by us because the Court, through the writer of the opinion, chose to dispose of the matter in three lines instead of three hundred.

The libellant urges also that this portion of the "Pinar Del Rio" decision is no longer authority after the opinion of the majority of the Court in Socony-Vacuum Oil Co. v. Smith, 1939, 305 U.S. 424, 59 S.Ct. 262, 83 L.Ed. 265. The sole question in that case, however, was whether assumption of risk is a defense in a suit brought

---

[1] There has been no request for reargument upon this phase of the case.

[2] 41 Stat. 1007 (1920), 46 U.S.C.A. § 688.

by a seaman under the Jones Act to recover for injuries resulting from his use, while on duty, of a defective appliance on the ship instead of a known safe method of doing his work. All of the discussion in the opinion by Mr. Justice Stone is directed to this point. The decision was one under the Jones Act. We do not, as we read the opinion, find even a dictum to support the position of the libellant here.

■ Our conclusion is, therefore, that this Court was right in its affirmance of the decree of the Court below upon the first hearing. 1942, 129 F.2d 857. We have no disposition to narrow the basis of recovery under the maritime law for injuries sustained by the seaman while in the service of the ship. See Jones v. Waterman S.S. Corporation, 3 Cir., 1942, 130 F.2d 797, affirmed by the Supreme Court on April 19, 1943, 317 U.S. 621, 63 S.Ct. 930, 87 L.Ed. ——. However, the "Pinar Del Rio" decision seems to be squarely on the point and it is our duty to follow it.

The decree of the District Court is affirmed.

BIGGS, Circuit Judge (dissenting).

In the instant case the first officer of the S.S. Wichita Falls caused two pieces of rope to be cut from a 1,500 foot length of rope which was in the Lyle-gun box on board the ship and used them to hang a stage to the bridge of the vessel. The appellant was ordered to get on the stage so that he might scrape and paint the bridge. He had no sooner gotten on the stage when one of the ropes broke, causing him to fall a distance of fifteen feet to the deck. He was injured and brought this suit under the general maritime law (not under the Jones Act) to recover damages.

The conclusion reached by the majority opinion is based upon the words used by Mr. Justice McReynolds in the opinion of the Supreme Court in Plamals v. Pinar Del Rio, 277 U.S. 151, 155, 48 S.Ct. 457, 458, 72 L.Ed. 827, "The mate selected a bad rope when good ones were available."

In Plamals v. Pinar Del Rio, Plamals was being hoisted up the smoke stack of the vessel in a boatswain's chair. A rope broke supporting the chair and he fell to the deck and was injured. The mate of the Pinar Del Rio had selected rope which was visibly old and worn.

There has been much argument in the case at bar as to the nature of the suit which Plamals brought. Actually he set forth two causes of action in his libel; one was based on the general maritime law for indemnity; the other, on the Jones Act. As I have indicated, Plamals' suit was an action in rem against the vessel. Mr. Justice McReynolds stated, pages 154-155, of 277 U.S., 48 S.Ct. at page 457, 72 L.Ed. 827, that the " * * * libel alleged that * * * [Plamals] injuries 'were due to the fault or neglect of the said steamship or those in charge of her in that the said rope was old, worn, and not suitable for use'. * * * The record does not support the suggestion that the Pinar Del Rio was unseaworthy. The mate selected a bad rope when good ones were available." He went on to say, "We must treat the proceeding as one to enforce the liability prescribed by Section 33. It was so treated by petitioner's proctor at the original trial; and the application for certiorari here spoke of it as based upon that section. The evidence would not support a recovery upon any other ground." The Supreme Court held that Plamals, at his election, was entitled to assert his rights under the general maritime law or under the Jones Act; that it would treat Plamals' libel as asserting his rights under the Jones Act, since he had not stated a good cause of action under the general maritime law, and that a seaman's rights under the Jones Act could not be enforced by a suit in rem.

There is a material difference between the facts of the Plamals case and those of the case at bar. In the Plamals case the mate negligently selected old and worn rope. In the case at bar the first officer carefully inspected the rope used and found it to be in good condition.[1] In the case at

---

[1] The first officer testified, "I personally examined the rope—me and the boatswain. We examined the rope; went right through, and we did not see any place where it was bad or showed that it was rotten. By examining, we just twisted it right along." He was asked the question, "That is you turned it counter wise to the way it was twisted?" The first officer answered, "Yes,—

right in the middle if you see it hard or dusty, it is rotten. We did not see that." R. p. 221. Nick Geletic, the member of the crew who cut the lengths from the Lyle gun rope at the first officer's direction, stated that the latter said to him, "Use that new line." R. p. 212. As a matter of fact, the rope had been in the Lyle gun box for about two years. R. p. 228.

bar the duty of the shipowner to supply its ships with good rope and proper appliances was delegated by it to the ship's officers. The respondent's marine superintendent testified that " * * * we always give the officers in charge what they order, so it is reasonable to think that they had the full supply [of rope]."[2] The superintendent did not testify that the S.S. Wichita Falls possessed an adequate supply of good rope. It is settled that the shipowner has an absolute duty to provide safe appliances for the ship for the voyage. In Sabine Towing Co. v. Brennan, 5 Cir., 72 F.2d 490, 494, certiorari denied 293 U.S. 611, 55 S.Ct. 141, 79 L.Ed. 701; The Portland, D. C., 213 F. 699; The H. A. Scandrett, 2 Cir., 87 F.2d 708. These cases, which represent the great weight of authority, follow the law as laid down by the Supreme Court in The Osceola, 189 U.S. 158, 23 S.Ct. 483, 47 L.Ed. 760. Mr. Justice Brown stated in that case, 189 U.S. at page 175, 23 S.Ct. at page 487, 47 L.Ed. 760, "That the vessel and her owner are, both by English and American law, liable to an indemnity for injuries received by seamen in consequence of the unseaworthiness of the ship, or a failure to supply and keep in order the proper appliances appurtenant to the ship."

The S.S. Witchita Falls was engaged in the intercoastal trade and was bound for Houston, Texas, from Philadelphia at the time of the accident. The rope had been in the Lyle-gun box for about two years. See note 1 supra. The ship could and presumably did make many such short voyages while the decayed rope remained in the Lyle-gun box and the shipowner had many opportunities to replenish it with sound rope. This, the shipowner failed to do. I think that the first officer had the right to assume that the rope in the Lyle-gun box was sound, for if there be a place where it may be presumed that sound rope will be found, it is in a life-saving device. Moreover, as I have stated, the first officer carefully examined the rope before using it. As a matter of fact, there is evidence that, whatever the first officer's subsequent knowledge may have been, he thought at the time the rope was used that it was new. See the testimony of Geletic, note 1 supra. I think that the first officer was not negligent. If I am correct in this, it follows that there was no negligence on the part of a ship's officer to insulate the shipowner from its absolute duty to maintain safe appliances as in the Plamals case.

My dissent, however, is based on other grounds as well. The decision of the majority of the court in effect holds that the Supreme Court by Mr. Justice McReynolds' single sentence upset the then existing rule of maritime law, a rule which consistently had given effect to the status of seamen as wards of the admiralty. But even if the majority is right in its conclusion as to the Plamals case, I think the effect of that decision has been mitigated by the decision of the Supreme Court in Socony-Vacuum Oil Co. v. Smith, 305 U.S. 424, 59 S.Ct. 262, 83 L.Ed. 265. The cited case arose under the Jones Act case but the defense asserted was assumption of risk by an oiler who had been injured because he had chosen to stand on a defective step in his ship's engine room when he could have performed his duties in safety from the floor. In passing upon this defense which in nature is substantially similar to that asserted in the case at bar, the Supreme Court took occasion to pass on the general maritime law and consider defenses under that law as they existed before the passage of the Jones Act. The Supreme Court reiterated the doctrine of the absolute liability of the shipowner to furnish safe appliances.[3] Mr. Justice Stone stated, 305 U.S. at pages 428, 429, 59 S.Ct. at page 265, 83 L.Ed. 265, "Before the Jones Act a seaman was entitled, to recover from a vessel or its owner, indemnity for injuries due to an unseaworthy vessel, or for 'failure to supply and to keep in order the proper appliances appurtenant to the ship.' The Osceola * * *." It is pertinent to observe that Mr. Justice McReynolds dissented on the ground that assumption of risk was a defense and did not go merely to mitigation of damages.

I conclude that Plamals v. Pinar Del Rio can no longer be considered to be the governing law, if it was ever such, on the point sub judice and for this reason also I think that the judgment should be reversed and the libellant awarded damages.

Indeed, to hold otherwise leaves the seaman in an unenviable position. He is guilty of mutiny if he refuses at the lawful command of his officer to go upon a stage already rigged for him. If he obeys his

[2] R. p. 174.

[3] The majority of this court do not contend that the Jones Act obliterated the rights of seamen under the general maritime law as it existed at the time of the passage of the Jones Act. Indeed, we held the contrary in Brown v. C. D. Mallory & Co., 3 Cir., 122 F.2d 98.

officer and is thrown to the deck through no fault of his own, he may break his neck for nothing. I think that the anomaly is increased by reason of the fact that if an accident occurs because a plank in a stage breaks and a seaman is injured, he may recover indemnity. It has not been suggested that a shipowner would be relieved of its absolute liability because an officer selected rotten planking for a stage when sound boards were available. Indeed, the law looks the other way. See Benedict on Admiralty, 6th Ed. § 83; and the authorities there cited.