**SMITH v. HELVERING, Commissioner of Internal Revenue.**

No. 8423.

United States Court of Appeals
District of Columbia.

Decided Feb. 14, 1944.

Mr. Stanley Suydam, of Washington, D. C., for petitioner.

Mr. Harry Baum, of Washington, D. C., of the Bar of the Court of Appeals of the State of New York, pro hac vice, by special leave of court, with whom Assistant Attorney General Samuel O. Clark, Jr., and Messrs. Sewall Key and A. F. Prescott, Special Assistants to the Attorney General, were on the brief, for respondent. Messrs. J. P. Wenchel, Chief Counsel, and Rollin H. Transue, Special Attorney, Bureau of Internal Revenue, both of Washington, D. C., also entered appearances for respondent.

Before GRONER, Chief Justice, and MILLER and ARNOLD, Associate Justices.

MILLER, Associate Justice.

The Commissioner determined a deficiency against the taxpayer for the calendar year 1937. The Board of Tax Appeals affirmed. The facts are not in dispute; instead, the taxpayer accepts the evidentiary findings of the Board and challenges the conclusion which it draws therefrom that: "The shares of stock owned by petitioner in San-I-Sal Laboratories, Inc. became worthless prior to the calendar year 1937."; as well as its decision approving the Commissioner's determination. The sole question of the case is whether the Board applied the correct legal test in deciding that the taxpayer's loss was not sustained in the year 1937; when, it is agreed, the outstanding liabilities of the corporation having been liquidated, application for a certificate of dissolution was

made and the dissolution occurred. Without more, this was an identifiable event sufficient to satisfy the requirements of the law.

The findings of the Board showed that the corporation's business was suspended and discontinued early in 1929 to the extent that, thereafter, it filed no federal income tax return, and it had no full-time employees. However, the Board found, also, that after 1929 the corporation disposed of most of its equipment piecemeal; that most of the business of the corporation after 1929 consisted of casual sales on orders received; that its gross sales amounted to $1624.70 in 1929 and *in each of the years 1930 to 1937,* inclusive, averaged approximately $350, which was less than the cost of the goods sold. It found, also: "From *1925 to 1937, inclusive,* petitioner advanced to or paid in behalf of the corporation sums aggregating $76,649.06. Of this amount $55,696.51 represented payments on accounts which petitioner had guaranteed. Other expenditures in behalf of the corporation went for *operating expenses.* In the fall of 1937, the outstanding liabilities of the Delaware corporation having been liquidated, an application for a certificate of dissolution was made and, on December 18, 1937, the Secretary of the State of Delaware issued a certificate of dissolution." [Italics supplied] We may assume, therefore, that although the corporation was insolvent, it nevertheless continued in existence until 1937. The Board, in its opinion, expressly concedes: "The company managed a bare existence through small sums paid into it each year by petitioner."

The test applied by the Board was stated in the following terms: "The loss must be taken in the year in which it is sustained and at no other time and this means the year in which these shares *in every substantial and realistic way* become worthless." [Italics supplied] We think the decision of the Board too severely restricted the taxpayer and sets too high a standard of industrial performance; especially in light of the remarkable industrial developments often achieved by courageous and optimistic American businessmen, who refused to be dissuaded when bankers and other conservative citizens advised that their enterprises were worthless in "every substantial and realistic way." Henry Ford is a striking example. Even though, perhaps, a businessman should not be encouraged to be an incurable optimist, if he is one, nevertheless, and continues to express his optimism by putting money into an insolvent organization, he should be given the benefit of the doubt. This would seem to be particularly true where, as here, the suspension of business occurred in 1929, the year of the great panic, and the transfusions administered by the taxpayer occurred during the period of the most severe depression ever experienced in this country.

The case which comes closest in its facts to the present case is Rassieur v. Commissioner.[1] The nub of the decision appears in the following language: "So long as taxpayer was willing to protect or pay the company debts and to advance funds for its current expenses, no one could say that any 'identifiable events' had occurred which finally determined the worthlessness of the stock."[2] The language of that opinion which immediately precedes the statement quoted is remarkably apt: "The panic struck this, as all other business, like a blight. Its business decreased and its owned securities diminished drastically in market values while expenses and indebtedness continued. In the endeavor to weather the storm and continue the business, various steps were taken, such as progressive restriction of business, curtailment of expenses, and sale of the 'market service.' *It is evident that there was no time from 1931 to dissolution when it could have converted its assets, paid its debts and had anything remaining for stock value if it had been compelled to rely only upon its own resources and to liquidate.* From the latter part of 1931, it could not have continued in business or paid its debts when due if it had been compelled to rely solely upon its own resources. However, the actual fact was that it did not have to so rely on its own resources alone. While there was neither legal nor moral obligation so to do, yet there were strong reasons of self-interest and probably of sentiment (help to his son) which impelled Theodore Rassieur to come to the financial aid of the company and he did so. The sole purpose of these two reasons was the same—to preserve the business. Unless that could be done, the taxpayer stood to lose at least the $250,000 he had contributed (for himself and the two others) to the capital stock; and his

[1] 8 Cir., 129 F.2d 820.

[2] Rassieur v. Commissioner, 8 Cir., 129 F.2d 820, 826. See, also, Ewing-Thomas Converting Co. v. McCaughn, 3 Cir., 43 F.2d 503, 504, 505.

son would be out of business. The mere winding up of this business would have defeated the purpose entirely. There can be no question that this purpose to preserve the business was the dominant moving consideration of these three men, who held all of the capital stock, during this entire period. The accomplishment of the purpose depended entirely upon the willingness of taxpayer to make advances. *As long as he continued willing, the business would last. As long as it lasted, there was a prospect of its successful survival.*[3] [Italics supplied]

The test proposed by the Board in the present case is a highly objective one which disregards what the taxpayer may think of his investment, how much of an optimist he may be, or what he may consider to be the possibilities of future successful operation, or of eventual recoupment. An examination of the cases persuades us that the subjective appraisal of the taxpayer is of much greater importance. The Supreme Court said as much in United States v. S. S. White Dental Mfg. Co.[4] In Forbes v. Commissioner,[5] Judge Parker, speaking for the Court of Appeals of the Fourth Circuit and reversing a decision of the Board in a similar case, used the following language: "Practical considerations must govern, for it is as true here as in Lucas v. American Code Co., 280 U.S. 445, 449, 50 S.Ct. 202, 203, 74 L.Ed. 538 [67 A.L.R. 1010], that: 'No definite legal test is provided by the statute for the determination of the year in which the loss is to be deducted. The general requirement that losses be deducted in the year in which they are sustained calls for a practical, not a legal, test.' * * * As said by Judge Learned Hand in De Loss v. Commissioner (C.C.A.2d) 28 F.(2d) 803, 804, 'So far as *human foresight* could go, the shares were worthless, and the petitioner might have deducted the loss.' We are not dealing with a case where *there was hope* that a business although involved *might be saved* and value

in the stock established. *Hope* had been abandoned and *liquidation had been ordered.*"[6] [Italics supplied] In Lucas v. American Code Co.,[7] the Supreme Court pointed out that the test which should be applied is a practical and not a legal one. In that case the loss which was paid by the taxpayer in 1923 resulted from a breach of contract which occurred in 1919. The Court upheld a determination of the Board that the deduction could not be taken in 1919 because of the various possibilities which then existed affecting the amount of the recovery which might be, eventually, obtained against the company. Among other things the Court listed, as evidencing the attitude of the taxpayer, that it did not accrue on its books during the tax year of 1919 any liability in the estimated amount of the loss; and that reserves set up by the taxpayer during that year bore no relation to the apprehended loss.[8] The Court concluded by saying: "It cannot be said that the loss actually paid by the Company in 1923 was, as a matter of law or of undeniable fact, sustained in 1919. *Nor did the Company so regard it.*"[9] [Italics supplied] If the taxpayer's attitude is a proper subject of appraisal in one case it should be in another.[10] Similarly, in Benjamin v. Commissioner,[11] a subjective test was applied. It was held that the mere shutting down of a mill and suspension of business—other than prospecting for additional soapstone deposits—was not sufficient to show a complete loss; and this in spite of the fact that no deposits were actually uncovered. The court held that while *hope* and *possibility of success* remained, proof of loss was not complete. In the present case, if we reason from the taxpayer's attitude, hope had not been abandoned and possibility of success remained.

We are mindful of the injunction that the "judicial function is exhausted when there is found to be a rational basis for the conclusions approved by the ad-

---

[3] Rassieur v. Commissioner, 8 Cir., 129 F.2d 820, 825, 826.

[4] 274 U.S. 398, 403, 47 S.Ct. 598, 71 L. Ed. 1120. See also, Rosing v. Corwin, 2 Cir., 88 F.2d 415.

[5] 4 Cir., 62 F.2d 571.

[6] Forbes v. Commissioner, 4 Cir., 62 F. 2d 571, 574.

[7] 280 U.S. 445, 449, 50 S.Ct. 202, 74 L. Ed. 538, 67 A.L.R. 1010.

[8] Id., 280 U.S. at page 451, 50 S.Ct. at page 203, 74 L.Ed. 538, 67 A.L.R. 1010.

[9] Id., 280 U.S. at page 452, 50 S.Ct. at page 204, 74 L.Ed. 538, 67 A.L.R. 1010.

[10] See also, Lewellyn v. Electric Reduction Co., 275 U.S. 243, 247, 48 S.Ct. 63, 64, 72 L.Ed. 262: "There is nothing in the findings from which we could conclude that the respondent in 1918 had ceased to regard his rights under the contract as having value or that there was then reasonable ground to suppose that efforts to enforce them would be fruitless."

[11] 2 Cir., 70 F.2d 719.

ministrative body"[12] and of the more recent admonition that a decision of the Tax Court should stand when it has " 'warrant in the record' and a reasonable basis in the law."[13] But we think the present case is one in which the elements of the decision are separable "so as to identify a clear-cut mistake of law * * *."[14] The Board's decision turned on the legal test which it applied. That presented a question of law. Hence it is appropriate for judicial reexamination.[15]

██ On argument, in the present case, the Government did not deny the taxpayer's argument that under the facts as they existed here the taxpayer would have been unable to establish proof of loss in any year preceding 1937. His inability to do so resulted from the fact that he underwrote the corporation's liabilities and financed its operations—even though on a "bare existence" basis—during each year until 1937. It is one thing to say, casually, that the loss actually occurred, contrary to petitioner's contention, *long before* 1937; it is quite another to suggest a specific year. We think the tax law was not intended to trap the taxpayer in such a hopeless dilemma, merely because he was optimistic and hopeful as to the future.

So far as concerns his burden of proving an identifiable loss, that was fully satisfied by proof of dissolution of the corporation in 1937.

Reversed.

GRONER, C. J. (dissenting).

I am in sympathetic accord with the conclusion in this case and would gladly go along, if I felt free to apply what seem to me to be the equities of the situation. For it is admitted that petitioner sustained a deductible loss in some year, and it is equally clear that in the hope of avoiding or postponing it, he stood by the ship to the very last. Whether, in this respect, enough was shown to identify the particular year of loss is, by established rule, a question of fact as to which the decision of the Tax Court is final where it has, as it has in this case, " 'warrant in the record' and a reasonable basis in the law." Dobson v. Commissioner, 320 U.S. 489, 64 S.Ct. 239. The Tax Court having found that petitioner has not borne the burden, which was his— Burnet v. Houston, 283 U.S. 223, 51 S.Ct. 413, 75 L.Ed. 991; Squier v. Commissioner, 2 Cir., 68 F.2d 25,—we are, as I think, foreclosed and must affirm.

---

[12] Rochester Tel. Corp. v. United States, 307 U.S. 125, 146, 59 S.Ct. 754, 765, 83 L.Ed. 1147.

[13] Dobson v. Commissioner, 64 S.Ct. 239, 246.

[14] Ibid.

[15] Mahnich v. Southern S. S. Co., 64 S. Ct. 455, 457: "Here, however, both courts below, holding themselves bound by The Pinar Del Rio, supra [277 U.S. 151, 48 S. Ct. 457, 72 L.Ed. 827], have, on the facts found, held, *as a matter of law* that the staging was seaworthy despite its defect. *That conclusion of law is reviewable here.*" [Italics supplied in part]