## UNITED STATES FIDELITY & GUAR-ANTY CO. v. UNITED STATES.

### No. 85.

Circuit Court of Appeal, Second Circuit.

Nov. 9, 1945.

Simone N. Gazan, of New York City, for libellant.

Corydon B. Dunham, and John F. X. McGohey, U. S. Atty., both of New York City, for respondent.

Before L. HAND, CHASE, and FRANK, Circuit Judges.

## L. HAND, Circuit Judge.

Both parties appeal from a decree in the admiralty, awarding damages for personal injuries to one, Walsh, a longshoreman, which he sustained while boarding the respondent's ship, "Charles A. Dana," in Savannah, on June 28, 1943. Walsh was a rigger and diver, employed by the Savannah Machine and Foundry Company; the libellant was the insurance company which carried workmen's compensation for that company and had paid Walsh his award. The suit was to recover full indemnity for Walsh's injuries. The judge found the respondent liable, and awarded $13,000 to the libellant made up as follows: $10,000 for loss of earning power, $1300 for suffering due to the injury; $1700 for hospital expenses. The respondent denies liability for several reasons which we shall take up later; the libellant appeals because the award for suffering was inadequate. The facts as developed upon the trial were as follows. The Savannah Machine and Foundry Company had contracted with the respondent to install fuel tanks upon the ship, which had docked on the evening of July 28. Walsh was ordered to begin the work on board; and when he came to the dock that morning, he found a gondola car on the dock alongside the ship, at a distance of about eighteen inches from her side. A "Jacob's ladder" was over the ship's side at the end of this car; and as it seemed an easy way to board the ship, Walsh mounted the gondola, walked along its top until he came to the ladder, and started to climb up. According to this own testimony, he had gone up some distance when the ladder slipped down over the ship's rail and threw him upon the stringpiece of the dock, causing severe injuries to his spine. (The more plausible testimony is that the ladder slipped as soon as he put his weight upon it; but it makes no difference which version is correct.) The evidence does not show how the ladder came to be left, hung over the ship's side; but it does appear that at some time during the morning its lower steps had been lying upon the dock and had been damaged. The boatswain saw this from the ship's deck, and directed a sailor to pull up the ladder; and the sailor did pull it up so that the bottom steps were clear of the deck, though not so high as to be out of reach of anyone standing on the dock who wished to use it. Presumably the end had originally been properly fastened to some cleat or stanchion on the deck; but when the sailor pulled it up, he left the slack lying on the deck unsecured; and in consequence, as soon as Walsh put his weight upon it, the slack paid out over the rail.

We agree that it was actionable negligence to leave the ladder in this condition. Had not the gondola car been beside the ship, there can be no doubt; the ladder would then have been an invitation to any active man who had business on

board to use it as Walsh did. We cannot see that the presence of the gondola car made any material difference. It was still possible, as we read the testimony, to use the ladder from the dock, and Walsh gave as his only reason for first mounting the car, that that gave him an easier ascent for the first seven or eight feet. It is quite true that if he had started from the dock, his fall would have been through so short a distance as probably to have caused little or no serious injury; yet we cannot accept this as an excuse for the respondent. What actually happened was not so far beyond expectation as to pass outside the scope of liability. Similarly, as to Walsh's negligence in using the ladder: strictly matter of defense. It stood there, apparently safe, and still intended for the use to which he put it: he could not see that it would not in fact give him the promised security.

The next defense is that the libellant cannot recover full indemnity. Section 933(i) of Title 33, U.S.C.A., vests all rights of the "employer" in an insurer, who has paid workmen's compensation; § 933(b) vests all the injured longshoreman's rights in the employer after he has paid compensation; § 933(d) gives the employer the workman's remedy over against the third person; and § 933(e) prescribes how the employer shall distribute any recovery. The meaning is plain; the injured employee loses his claim against the third person by accepting compensation; but the employer may prosecute it—or the insurer, if the employer is insured—; and, when the employer recovers, he is to distribute the recovery. It is not necessary to join the employee, but it is permissible. Moore v. Hechinger, 75 U.S.App.D.C. 391, 127 F. 2d 746.

Next, the respondent argues that it should be excused because it paid the premiums which insured the Savannah Machine and Foundry Company against liability for workmen's compensation. It would be answer enough that the premiums in question paid for insurance against other risks than Walsh's injuries; but the defense is bad anyway. We are not sure that we understand what is the respondent's theory, or indeed if it has worked out any; but, giving the greatest plausibility to the defense that we are able, we will state it as follows. When anyone pays the premium which insures an employer against liability for workmen's compensation, it is to be understood that, having in this way provided for the employer's protection he does not expect to be called upon to respond himself, if he becomes a tortfeasor: that is an implied term in the agreement between the two. There are two answers to this, even assuming that the contract will bear such an interpretation. So far as concerns the tortfeasor's liability up to the amount of workmen's compensation, while it may be a good answer as between the employer and himself that the insurance has protected the employer, it is no answer to the insurer, because it ignores his right of subrogation, which is an incident to his contract of insurance. So far as concerns the tortfeasor's liability to the employee beyond the amount of workmen's compensation, no agreement between the tortfeasor and the employer can prejudice the employee, because, although it is true that, by accepting compensation, the employee assigns his claim against the tortfeasor to the employer or insurer, the assignee holds it for the benefit of the employee so far as it is not necessary for his own recoupment. The assignee is in effect a trustee, and, although it is true that the statute gives him power to compromise the whole claim, he must not, in doing so, entirely disregard the employee's interest. Certainly he may not in advance release the whole claim upon consideration that he shall be personally released from his liability for workmen's compensation. In the Aden Maru, 51 F.2d 599; and Colvin v. Kokusai Kisen Kabushiki Kaisha, 5 Cir., 72 F.2d 44, this was the result upon the same facts, though it is true that the reasoning was quite different.

The contract between the respondent and the Savannah Machine and Foundry Company contained a provision that the contractor should not permit any lien to arise against ships which it repaired. From this the respondent argues that, since the Suits in Admiralty Act, 46 U.S.C.A. § 741 et seq., is the source of the court's jurisdiction, and since it confers jurisdiction only in cases where a lien arises against the ship, the district court did not have jurisdiction. It is true that the decision in Plamals v. Pinar Del Rio, 277 U.S. 151, 48 S.Ct. 457, 72 L.Ed. 827, held that the respondent's liability to Walsh was not secured by any lien against the ship; but a complete answer to the argument is that the case of Eastern Transportation Company v. United States, 272 U.S. 675, 47 S.Ct. 289, 71 L.Ed. 472, held

a claim justiciable under the Suits in Admiralty Act although it would not have raised a lien upon the vessel, had it been privately owned. Furthermore, the contract did not include such a lien as Walsh's. It read as follows: "The Contractor * * * shall not * * * permit * * * any * * * lien * * * arising from any act or omission of the Contractor." If Walsh's claim had raised a lien at all, it would not have arisen from any act or omission of the Savannah Machine and Foundry Company, but of the respondent itself. Finally, although the contract provided a limitation of six months for the presentation of claims "arising under this contract," the claim did not so arise. It arose because of the respondent's tort which had nothing to do with the contract.

▓▓▓▓ This disposes of the respondent's singularly baseless appeal. There remains the libellant's which, as we have said, is confined to the inadequacy of the court's allowance for Walsh's suffering—$1300. It is true that we are particularly slow to interfere with any award for suffering, that being in all cases insusceptible of quantitative measurement. Carroll v. United States, 2 Cir., 133 F.2d 690, 694. Nevertheless, after every allowance, the award here appears to us to be too small. Probably, the damaged condition of Walsh's spine was in part congenital; but there can be no doubt that, however little the fall might have injured the spine of a normal man, it injured Walsh's enough to subject him to a long and severe ordeal; and, in accordance with the general doctrine, the respondent must completely indemnify him, regardless of his idiosyncrasy. The Jefferson Myers, 2 Cir., 45 F.2d 162; Pieczonka v. Pullman Co., 2 Cir., 89 F.2d 353, 357; Oliver v. Yellow Cab Co., 7 Cir., 98 F.2d 192, 195. He was first treated in a hospital for twelve days; later his spine was "fused" and he was another month in the hospital. After this he was taken back to the first hospital for two and a half months. He was in a cast for thirteen weeks, flat on his back; and this caused such stagnation in his eliminatory processes that he developed a case of stone, which had to be removed. This was followed by still another operation that kept him in the hospital for two weeks and left him unable to work for about six months more. Taking one thing with another, we think that, the lowest award for suffering which should have been made was $4000; and we therefore raise the award granted by $2700.

Decree modified by adding $2700 to the recovery, and as modified affirmed.