Theodoros ZOURAS, Libellant, Appellant,

v.

MENELAUS SHIPPING CO., Ltd.,
Claimant, Appellee.

No. 6286.

United States Court of Appeals
First Circuit.

Heard May 4, 1964.
Decided Sept. 17, 1964.

David B. Kaplan, Boston, Mass., for appellant.

Robert J. Hallisey, Boston, Mass., with whom Hiller B. Zobel and Francis H. Fox, Boston, Mass., were on brief, for appellee.

Before WOODBURY, Chief Judge, and HARTIGAN and ALDRICH, Circuit Judges.

WOODBURY, Chief Judge.

A Greek seaman on a Liberian flag vessel owned by a Liberian corporation was injured on his vessel, the "World Luck," while it was anchored in Boston Harbor in the course of a voyage from Italy to Japan. He was taken to the United States Public Health Service Hospital in Boston for treatment and apparently while he was still there his proctors libeled the vessel *in rem* stating three causes of action, one for unseaworthiness, another for negligence under the Jones Act and a third for maintenance and cure. The seaman gave his deposition and was repatriated to Greece where so far as is known he still resides.

On motion of the owner, Menelaus Shipping Co., Ltd., as claimant, the court below dismissed all three counts of the libel on the authority of Lauritzen v. Larsen, 345 U.S. 571, 73 S.Ct. 921, 97

L.Ed. 1254 (1953), and Romero v. International Terminal Operating Co., 358 U.S. 354, 79 S.Ct. 468, 3 L.Ed.2d 368 (1959), plus Plamals v. Pinar Del Rio, 277 U.S. 151, 48 S.Ct. 457, 72 L.Ed. 827 (1928), as to the Jones Act count, and the libellant appealed. We think the District Court's action was correct.

■■ The Court in Plamals v. Pinar Del Rio, supra, held that the Jones Act does not create a maritime lien but gives rise only to an action *in personam* against the shipowner, wherefore the Act could not be enforced in admiralty by suit *in rem*. And the Court in Lauritzen v. Larsen, supra, 345 U.S. at page 574, 73 S.Ct. 921, reaffirmed that holding. The Jones Act count was properly dismissed on the authority of these cases if for no other reason.

■ The other two counts are under the general maritime law without specification of the maritime law of any particular country. Insofar as the general maritime law of the United States is concerned, we think these counts were properly dismissed for failure to state a claim upon which relief could be granted on the authority of the Lauritzen and Romero cases cited herein above, which hold that the general maritime law of the United States is inapplicable in the absence of sufficient "points of contact" between the transaction or event sued upon and the United States. To determine the "points of contact" between the libellant's injury and the United States, we turn to the facts in detail and the criteria for choice of law established in the two cases cited last above.

■ The seaman-libellant is a Greek citizen, residing in Greece, to which he has returned, who possessed a Greek "seaman's book" issued by the Greek government and who signed a "Seaman's Contract" in the Greek language in Piraeus with "the Piraeus established company under the title of Meritine Co. Niarchos (Hellas) representing * * * and acting as agent and for account of the Bermuda established Co. and under the title Meritine Investment and Shipping Company, administrator" of the "World Luck" for service as a seaman on that vessel, or at the employer's choice, "in any ship of the Niarchos group." The vessel was owned by a Liberian corporation and flew the Liberian flag but the evidence shows as the "seaman's contract" indicates that it was operated under some sort of arrangement, no details of which appear, as part of the Niarchos fleet whose initial it bore on its stack. The officers and crew of the vessel were all Greek citizens except the radio operator who was British, and the employment contract the seaman signed provided that it was "subject to the Hellenic law relative to vessels of the same capacity and of the Hellenic arbitrary contract concerning mercantile labor and the special mercantile regulations of the vessel." Furthermore the contract provided that any disagreement between the seamen and the employer concerning the execution and interpretation of the contract "or accruing in general for demands of the seaman from a case" would be "subject to the decision of the Piraeus Courts" excluding interference by any other court local or foreign. So far as appears the vessel did not call regularly at any United States port or ports nor is there anything to indicate that any United States citizen had any interest whatsoever in the vessel or in its voyage.

The only "point of contact" between the event sued upon and the United States is that the libellant's injury occurred in local territorial waters, and the Romero case conclusively establishes that this is not enough to posit application of the general maritime law of the United States.

■ We see no merit in the appellant's argument that the foregoing principle has no application for the reason that this is a suit *in rem* in admiralty, whereas in Lauritzen and Romero the actions were *in personam* on the law side of the court. Regardless of the route the libellant might take to vindicate his alleged right, either by action at law or suit in admiralty, the question of the scope of application of the general mari-

time law of the United States would be the same and the cases cited establish that cases like this are not within its scope.

Insofar as the general maritime law of some foreign country is concerned the court below properly dismissed the suit in its discretion for it has been the rule for a long time that although admiralty courts have complete jurisdiction over suits of a maritime nature between foreigners, nevertheless "the question is one of discretion in every case, and the court will not take cognizance of the case if justice would be as well done by remitting the parties to their home forum." The Maggie Hammond, 9 Wall. 435, 457, 19 L.Ed. 772 (1869), quoted and cited with approval in Langnes v. Green, 282 U.S. 531, 544, 51 S.Ct. 243, 75 L.Ed. 520 (1931), and in Canada Malting Co. v. Paterson Steamships, Ltd., 285 U.S. 413, 420, 52 S.Ct. 413, 76 L.Ed. 837 (1932). See also Charter Shipping Co. v. Bowring, Jones & Tidy, Ltd., 281 U.S. 515, 517, 50 S.Ct. 400, 74 L.Ed. 1008 (1930).

The facts that lead to the conclusion that the general maritime law of the United States does not apply also lead to the conclusion that United States courts do not afford a convenient forum. While the vessel involved flew the Liberian flag and was technically owned by a Liberian corporation, the evident fact is that for practical purposes she was owned, or at least operated, by Greek interests. And the libellant is a Greek citizen residing in Greece who has returned to his native country. Moreover the law of the parties' choice is that of Greece, and, for what it may be worth, that was the place of contracting. On the facts of this case we cannot see that any injustice whatever would result in relegating the libellant to his home forum for determination of whatever legal rights he might have.

After hearing on the claimant's motion to dismiss, the libellant moved for leave to amend his libel by adding a count for unpaid wages. After dismissing the libel and after hearing, the court denied the motion for leave to amend.

We see no abuse of discretion in denying leave to amend at such a late stage of the litigation.

Judgment will be entered affirming the decree of the District Court.